214

## COUNTY SCHOOL BOARD OF YORK COUNTY

v.

## VIRGINIA EPPERSON, ET AL.

Record No. 921772

September 17, 1992

Present: All the Justices

*James E. Barnett, Assistant County Attorney (William M. Hackworth, County Attorney*, on brief), for appellant.

*Arnold H. Abrons (Abrons, Fasanaro & Sceviour*, on brief), for appellees.

*Amicus Curiae:* Virginia School Boards Association (Gregory M. Johnson; Richard E. Carter; McClure, Callaghan, Carter & Atkins, on brief).

*Amicus Curiae:* Virginia Education Association (Warren David Harless; Theodore F. Adams, III; Christian, Barton, Epps, Brent & Chappell, on brief).

JUSTICE COMPTON delivered the opinion of the Court.

This appeal stems from the objections of two public school teachers to their involuntary transfers from one school to another in the same school division.

The Constitution of Virginia, implemented by statute, mandates that the "supervision" of public schools "in each school division shall be vested in a school board." Va. Const. art. VIII, § 7; Code § 22.1-28. Code § 22.1-295 provides: "The teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the

division superintendent." Code § 22.1-297 gives a division superintendent authority to assign all teachers to their respective positions in the school wherein they have been placed by the school board.

In Article 3 of Chapter 15 of Title 22.1 of the Code, the General Assembly has provided a method for resolving disputes relating to the work of teachers. Code §§ 22.1-306 to -314. The Virginia Board of Education, in its "Procedure For Adjusting Grievances," has established a process, mainly tracking the statutes, "for resolving disputes concerning application of local school board policies, rules, and regulations as they affect the work of employees." Generally, the State Board procedure sets out a four-step process in which a teacher may submit a dispute successively to the teacher's immediate supervisor, the principal, the division superintendent, and a fact-finding panel. *See* Code §§ 22.1-308 to -312.

The statutory scheme allows the school board initially to decide, either at the request of the division superintendent or the grievant, whether a matter "is grievable." Code § 22.1-314. That decision may be appealed to the circuit court having jurisdiction in the school division. *Id.* In the present case, the narrow question is whether the court below erred in deciding that the matters complained of are "grievable." If the trial court was correct, the remaining steps of the grievance procedure may be utilized to decide the merits of the matters at issue.

During the 1991-92 school year, appellees Virginia Epperson and Anne Marie Boelt were employed by the York County School Board and assigned as elementary school teachers at Magruder School. In April 1992, each teacher was notified in writing by the School Board that her assignment for the next school year "will be other than Magruder Elementary School." The letter stated that the reassignments were being made "to optimize the instructional program throughout the School Division."

In May 1992, each teacher, using a form prescribed by the State Board's procedure, filed a "Statement of Grievance," signed by each teacher and their attorney. In the blank space labelled "Specific relief requested," each teacher stated that she wishes "to remain at Magruder School" in her "current capacity" and desires the School Board to follow certain of its policies "as found in the policy manual." Subsequently, the teachers completed the first steps of the grievance procedure by meeting with the Magruder principal, who decided that he lacked the authority to grant the relief requested.

Proceeding to the next step in the process, the teachers scheduled meetings with the division superintendent. Prior to the date set for those meetings, at the request of the superintendent's designee, each teacher filed a written statement amplifying the nature of the grievance. The identical statements were attached to and became a part of the grievances, and the designee filed a statement saying "I have received and understand the explanation of the grievances."

Before either teacher met with the superintendent, he elected to place the issue of grievability before the School Board. Upon consideration of a memorandum from the teachers' attorney and oral argument at a hearing, the School Board decided by a vote of four to one that the matters were not "grievable."

The teachers appealed this ruling to the circuit court which, after a combined hearing on the issue of "grievability," ruled that the teachers "have stated grievable matters" because the teachers allege "that the School Board failed to apply applicable rules, regulations, policies and procedures as written and established by the School Board." The trial court thus reversed the School Board and remanded the matters with direction that the School Board allow the teachers "to process their grievances as to each issue raised." We awarded the School Board an appeal from the trial court's September 1992 judgment order.

The focus of this appeal is upon Code § 22.1-306, which contains the definition of "Grievance." In subparagraph (1), the statute provides that " '*Grievance*' means a complaint or dispute by a teacher relating to his or her employment including, but not necessarily limited to" certain enumerated matters such as disciplinary action including dismissal or placement on probation, acts of reprisal against a teacher for filing or processing a grievance, and complaints of discrimination.

Following this enumeration, the statute specifies: "Each school board shall have the exclusive right to manage the affairs and operations of the school division."

Continuing, subparagraph (1) provides that the term "grievance" shall not include teachers' complaints or disputes relating to certain other enumerated matters such as establishment of wages, suspension or nonrenewal of the contract of a teacher who has not achieved continuing contract status, discharge because of decrease in enrollment, suspension from duties in emergencies, and, important to the present case, "hiring, transfer, assignment and retention of teachers within the school division."

The subparagraph concludes with this sentence: "While these management rights are reserved to the school board, failure to apply, where applicable, the rules, regulations, policies, or procedures as written or established by the school board is grievable."

On appeal, the teachers point out that the "scope of review of the issue of grievability is to determine if grievants have alleged matters which, if proved, would be within the definition of a grievance, and not whether, for purposes of such review, the School Board agrees or disagrees with the substance of the grievances." Continuing, the teachers contend that they provided "adequate information" under the State Board procedure "to constitute proper filing of grievances" under Code § 22.1-306 because they have described the event complained of, given a concise description of the School Board regulations upon which the claims are based, and specified what they seek through use of the grievance procedure. All of this, coupled with the statement by the superintendent's designee that she understood the teachers' explanation of their grievances, the teachers contend, demonstrates that the trial court correctly ruled in their favor.

These contentions require an examination of the identical statements of grievance. The adequacy of the documentation must be measured against the standards recently established in *Tazewell County School Board* v. *Gillenwater*, 241 Va. 166, 400 S.E.2d 199 (1991), in which, on similar facts, we held that a teacher's complaint did not constitute a "grievance" as defined by Code § 22.1-306 when, as here, the teacher asserted that the school board had failed to apply a particular rule, regulation, policy, or procedure in effecting the teacher's involuntary transfer. In that case, we said that the teacher's statement "does not contain any facts from which the trial court could have inferred that the School Board failed to comply with this regulation." *Id.* at 170, 400 S.E.2d at 201. As we shall demonstrate, close scrutiny of the documentation in the present case reveals that the matters asserted are not "grievable" under the *Gillenwater* test.

On their "Statement of Grievance" forms, each teacher asserted: "I have been involuntarily transferred from Magruder because of reduction of staff." Each alleged that the principal and division superintendent had "publicly stated that the reason for the transfer is reduction of staff *at Magruder*. Reduction of staff has specific guidelines as stated in policies listed above. I further feel that because I exercised the 'open door' policy, I am being unreasonably

treated'' (emphasis added). The policies were ''listed above'' in the following fashion: ''7.2.23; 7.2.23R; 7.2.28, 1st Amendment-Freedom of Speech, 7.1.7-R.''

■ In their written statements amplifying the ''Statement of Grievance,'' the teachers repeated most of the assertions contained on the forms but focused on specific parts of the School Board's policies, as set forth in its Policy Manual, that were ''being grieved.'' First, referring to policy No. 7.2.23, each teacher said it ''allows legitimate assignments in accordance with the needs of the school system. The proposed transfer does not meet that standard.'' Policy No. 7.2.23 provides: ''Each employee will be assigned or transferred by the Superintendent in accordance with the needs of the school system.'' But, paraphrasing *Gillenwater*, the teachers' statements do not contain any facts from which it can be inferred that the School Board failed to comply with this regulation. Conclusory statements, such as ''the proposed transfer does not meet that standard,'' will not suffice. In addition, complaints about the school authorities' determination regarding the needs of the school system are clearly outside the power of a teacher to raise in the context of a grievance.

Second, referring to policy No. 7.2.23-R labelled ''Certificated Staff Procedures For Assignment And Transfer,'' the teachers focused on subparagraph III(2). Noting that the subparagraph deals with ''Involuntary Transfers - Between Different Schools,'' they say it applies ''for reduction in number of staff,'' stating ''I was not given preference based on my length of service and qualifications.''

Subparagraph III(2) provides:

''When overstaffing occurs and a reduction in the number of staff members is necessary, members of the overstaffed school will be given preference over all requests for transfers. In effecting such transfers, preference will be given to presently employed staff members and such preference will be based on length of service and qualification for the position. (See policy 7.2.28 - Reductions in Staff)''

■ That policy does not apply to these teachers. It applies only when there is a system-wide reduction in the number of teachers, thereby threatening teachers with layoffs, not when the number of teachers at one school is to be reduced. When ''a reduction in the number of staff members is necessary'' because of ''overstaffing,''

then "preference" will be afforded to "presently employed staff members" when transfers are effected. This is a promise that teachers selected for transfer from an overstaffed school will be given "preference" over teachers that are newly employed in the system when there are vacancies elsewhere in the school system. In other words, as the School Board argues, "*all* presently employed teachers will be preferred for open positions over otherwise qualified applicants who are seeking first-time employment with the school division." Clearly, neither teacher has alleged she is in that situation. They simply are being relocated, not laid off. Thus, the question of "preference" over new applicants is not an issue, according to the teachers' statements.

■ Third, referring to policy No. 7.2.28, which is entitled "Certificated Staff Reductions In Force," the teachers say it "sets forth a seniority based system for RIF's." They state, "The policy was not complied with." Again, paraphrasing *Gillenwater*, the conclusory statement does not contain any facts from which it can be inferred that the School Board failed to comply with this regulation. In addition, the plain language of the policy deals with a reduction in "the professional staff," a clear reference to a division-wide curtailment of the total number of teachers employed by the School Board. Rather than implicating this policy in their statements of grievance, the teachers have demonstrated that the policy has no application to them.

Finally, referring to policy No. 7.1.7-R, labelled "Open Door Policy," each teacher stated, "I further feel that because I exercised the 'open door' policy, I am being unreasonably treated." Elaborating, each teacher said, "I participated in meetings pursuant to 7.1.7-R, wherein the subject matter was the administration of Magruder. I believe I am being punished for this participation. Evidence will be presented in the grievance to substantiate this." Continuing, each teacher declared, "My grievance statement as to the first amendment is related to the above paragraph, as to being penalized for my exercise of a constitutional right to speak on matters at Magruder Elementary School, to my supervisors."

Generally, the School Board's "Open Door Policy" permits direct communications between School Board employees and persons other than their immediate supervisor. Stating that employees ordinarily communicate directly with their immediate supervisors, the policy establishes "procedures to be followed in the unusual instance when a School Board employee believes sufficient cause

exists to address an issue . . . to a person in the administrative organization higher than their immediate supervisor.'' Among the procedures set forth, the policy states: ''No School Board employee has the authority . . . *to penalize* a subordinate for using this channel of communication'' (emphasis added).

The teachers observe that the School Board should ''be accountable for complying with its own voluntarily enacted policies.'' They argue that their exercise of the right to speak freely with their employer, ''as created and encouraged by the employer with a promise of non-retaliation for such speech, and the allegation of the taking of retaliatory action by the employer afterwards, does state for the purposes of a grievance, a grievable matter.'' We do not agree with this argument.

■ The complaint of an alleged violation of this policy, including the supposed constitutional deprivation, suffers from the same *Gillenwater* inadequacy as the foregoing complaints — conclusory statements that do not contain facts from which it can be inferred that the School Board failed to comply with its policy.

■ More importantly, however, the claimed violation of this policy suffers from another, fatal flaw. The teachers are attempting to convert simple transfers into an alleged effort by the School Board, in the words of the policy, ''to penalize'' them for exercising the ''Open Door'' privileges.

But nowhere in the policy is there any provision that recognizes as punitive action the mere involuntary transfer of a teacher. Given the unambiguous legislative mandate of Code § 22.1-306(1) that each school board ''shall have the exclusive right to manage the affairs and operations of the school division,'' the School Board policy relied upon must unambiguously allow an involuntary transfer to be transformed into punitive action amounting to a ''penalty'' that is ''grievable.'' There is no such statement, unambiguous or otherwise, in the ''Open Door'' policy recognizing involuntary transfers as penalties. Hence, a transfer is not ''grievable'' as a violation of this policy.

Consequently, we hold that the trial court erred in ruling that the teachers' assertions are ''grievable'' within the meaning of Code § 22.1-306. Therefore, the judgment of the trial court will be reversed and the proceedings will be dismissed.

*Reversed and dismissed.*