# CIRCUIT COURT OF THE CITY OF WINCHESTER

James Rust

 v.

City of Winchester

October 22, 1998

Case No. (Law) 98-157

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on October 16, 1998, on an appeal from a decision by the City Manager that the grievance of a former city police officer was not a grievable issue under the City's grievance procedure. The parties appeared with their counsel: Michael T. Leibig, Esquire, for the Petitioner; and Robert T. Mitchell, Jr., Esquire, for the Defendant. The case was briefed and argued, and the Court has made the following decision that a grievable issue has been presented and that the parties must apply the City's grievance procedure to this case and convene a grievance panel.

## I. Statement of Material Proceedings

The following facts are established in the record of this case.

This is a proceeding to determine grievability under the City of Winchester's Personnel Management System § 7.6(d) and the Code of Virginia § 15.2-1507(A)(9)(a).

Until his separation from employment on July 23, 1998, James Rust was a police officer employed by the City of Winchester. Rust's resignation memorandum to the Chief of Police is dated July 23, 1998, and states:

> After being advised that I did not pass my polygraph I was given a choice to resign with a clean record or take the chance of being

terminated by you. I maintain my innocence regarding damage to car 63 and lying about it.

I write this with sorrow and regret because I have always been a good police officer and do not deserve this.

Please continue your investigation because I did not talk to anyone especially any dispatchers about obtaining a tow truck on tack radio or any other radio. I wish you would find out why they are lying and find that tow truck.

I wish I had more time to gather my thoughts and concerns or consult with my family and attorney.

Regretfully submitted,
/s/ *James Rust*

At this time I am letting you know that I will be resigning from the WPD effective whenever you desire. J.S.R.

Officer Rust's August 4, 1998, Grievance and FLSA Retaliation Claim states:

While on a mandatory long trip to take a polygraph as part of an investigation into alleged misconduct, Officer Rust was told by Major Hildebrand and Lt. Mouzer that he could either resign from the Department or be terminated. He was encouraged to resign and was told that he could not speak with his wife and an attorney prior to making his decision. At the time, July 23, 1998, he was traveling with his superior officers out of town and more than 200 miles from home. Faced with this constructive discharge, Officer Rust told Major Hildebrand that he would resign and prepared a written resignation on the road under Major Hildebrand's close supervision. The written document included references to the unusual situation which precipitated it. When he returned to Winchester he was denied a copy of the letter of resignation because it was "in the papers set aside for the Chief's review." He then consulted with his wife, a counsellor and attorney and immediately called Major Hildebrand and told him that he wished to withdraw his resignation. Major Hildebrand indicated that the resignation had been accepted. Officer Rust subsequently received a letter from you [Chief Reynolds] accepting his resignation. Rust has clearly revoked his coerced resignation, which was obtained

under duress, and has informed the Department of his wish to withdraw it.

There is no just cause for Officer Rust's termination. Further, the Department has retaliated against Officer Rust and others as a result of an earlier FLSA complaint.

On August 13, 1998, the City Manager of the City of Winchester determined that Rust's grievance challenging his separation of employment with the Winchester Police Department was non-grievable under Virginia Code § 15.2-1507A(9)(a).

On August 27, 1998, in accord with the applicable rules, the City Manager filed with this Court the record in this case upon which the determination of non-grievability was made, which includes:

a. A copy of the August 13, 1998, letter of the City Manager advising the grievant, James Rust, of the City Manager's determination that Mr. Rust's resignation was not grievable;

b. A copy of a letter dated August 20, 1998, from Officer Rust's attorney, Michael T. Leibig noticing the City of the appeal of the City Manager's decision of non-grievability; and

c. Copies of "anticipated" exhibits: (i) James Rust's letter of resignation, dated July 23, 1998, and (ii) Chief of Police Gary W. Reynolds' letter accepting Mr. Rust's resignation.

The City of Winchester Grievance Procedure under the City's Personnel Management System provides in Section 7.6(D) in accord with the applicable requirements of the Virginia Code § 15.2-1507, that decisions of the City Manager, such as that made on August 13, 1998, in this case may be appealed to this Court for a final and binding decision on the issue of whether the grievance qualifies for a hearing.

Section 7.6(D) of the City's Grievance Procedure adopts the definition of a grievance contained in Virginia Code § 15.1-7.2:A (now § 15.2-1507(A)(1)). The statutory definition provides that "dismissal shall be grievable whenever resulting from formal discipline or unsatisfactory performance ... ." A corollary of this definition is that resignations are not grievable.

The grievance procedure also provides that dismissals arising out of an effort to enforce or which are the result of violations of the Fair Labor Standards Act are grievable, "acts of retaliation because an employee has complied with any law of the United States or of the Commonwealth, has reported any violation of such law to a governmental authority, or has sought any change in law before Congress of the United States or the General Assembly." Virginia Code § 15.2-1507(A)(1).

Officer Rust claims that his dismissal arose out of allegations of unsatisfactory performance and that his resignation letter was procured by duress. He also alleges that he was constructively discharged and that his termination was in retaliation for his earlier efforts to press his rights under the Federal Fair Labor Standards Act. The City claims that Officer Rust's claim is not grievable because no "dismissal" is involved, because Officer Rust resigned.

The issue before the Court is whether this case presents a grievable issue and qualifies for a grievance panel hearing.

## II. *Conclusions of Law*

There was initially a question about the procedure by which the Court would determine whether the issues presented were grievable and whether the Court would hear evidence to determine the issue of grievability, which the Court declines to do. In *Tazewell County Sch. Bd. v. Gillenwater,* 241 Va. 166, 400 S.E.2d 199 (1991), the trial court heard evidence to determine whether a public school teacher's "statement of grievance" constituted a grievance under Code section 22.1-306, but the Supreme Court based its decision on grievability on the "statement of grievance." *Accord County Sch. Bd. of York County v. Epperson,* 246 Va. 214, 435 S.E.2d 647 (1993).

At this stage in the grievance procedure, there has been no substantive review of the merits of the Petitioner's complaint, because the threshold question as to whether the City's grievance procedure applies to Rust's grievance remains to be resolved. Virginia Code § 15.2-1507(B) expressly provides that the "court ... shall hear the appeal on the record transmitted by the chief administrative officer ... and such additional evidence as may be necessary to resolve any controversy as to the correctness of the record. The court, in its discretion, may receive such other evidence as the ends of justice may require." The Court is presented with the legal question as to whether, assuming Rust's allegations in his statement of grievance to be true, a grievable issue has been presented under the City's Grievance Procedure. Therefore, the Court will apply the principles governing ruling on a demurrer to the petitioner's allegations in his statement of his grievance to determine whether a grievable issue has been presented. In considering a demurrer the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White,* 241 Va. 23, 24, 400 S.E.2d 160 (1991). To hold otherwise would necessarily entail a substantive consideration of the evidence by the Court before it had

ever been considered by the City under its grievance procedure. *Cf. Dennison v. Frederick County*, 16 Va. Cir. 158 (Frederick County 1989) (probability of evidence standard applied and decided before *Gillenwater, supra*).

A voluntary resignation does not present a grievable issue, because if a resignation is truly voluntary there is no dispute for the employee to pursue. However, a resignation procured by fraud, coercion, or duress is not a voluntary resignation, but rather is a forced or contrived dismissal. The petitioner claims that his resignation was procured by duress, which is a doctrine which courts have long recognized may vitiate a contract.

> Duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist .... Authorities are in accord that the threatened act must be wrongful to constitute duress.

*Pelfrey v. Pelfrey*, 25 Va. App. 239, 487 S.E.2d 281 (1997) (separation agreement found to be not the product of duress). *See also* Model Jury Instruction No. 45.470 and comments.

As the United States Federal District Court observed in *Morrell v. Stone*, 638 F. Supp. 163 (W.D. Va. 1986), which is cited by the City, "Courts that have decided whether a particular demotion or resignation was taken voluntarily have generally based their decision on the principle that the element of voluntariness is vitiated only when the demotion or resignation was agreed to under duress bought on by government action." In 82 Am. Jur. 2d, *Wrongful Discharge*, § 194, Practice Guide, the editors state:

> The decisions on coerced resignations and constructive discharge are *essentially fact-based rulings*. The issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. The burden of proof is on the employee to show duress by proving that his or her will was overborne by bad faith on the part of the employer.

This is the rule to be applied in this case. A resignation procured by fraud, duress, or coercion is not a voluntary resignation within the contemplation of the City's Grievance procedure.

In *Jacobs v. Jacobs*, 218 Va. 264, 237 S.E.2d 124 (1977), the Supreme discussed the fact specific nature of duress:

> What constitutes duress depends upon the facts of each case, and the court [the grievance panel in this case] must be controlled by a sound discretion in each to see that right and justice are done. The question is to be determined on consideration of the surrounding circumstances such as age, sex, capacity, situation, and relation of the parties. Thus, in a suit to set aside a deed on the ground of duress, the grantor's age, capacity, and all attendant circumstances must be considered … . [Footnotes omitted.]

The character of the document procured by duress, be it a contract, a resignation letter, or a deed, does not alter the analysis. If it is proved that the petitioner's resignation letter was procured by duress, then it was not a resignation but rather a termination, in which case the petitioner is entitled to have his termination submitted to the city's grievance procedure.

In *McNeil v. Wisconsin*, 115 L. Ed. 158, 169-70, n. 1 (1991), the United States Supreme Court discussed a criminal accused's Fifth and Sixth Amendment rights to counsel and noted that "[t]he simple fact that the defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly." In this case, the grievance states that the petitioner requested time to talk with his attorney and to his family and that his request was refused, from which it may be inferred that the petitioner's resignation was not done on the initiative of the petitioner but rather in response to his supervisors' entreaties during the long car ride. Had a criminal suspect made the same request for counsel under the same circumstances as alleged, riding in a police car with two police officers 200 miles from home, while being importuned by them, the request to speak to a lawyer would have had to have been honored by the police. While the context is different and subject to different governing authorities, the irony that a police officer, who allegedly voluntarily resigned, was allegedly extended less consideration than a criminal suspect is not lost on the court, and it is certainly a fact, which coupled with others alleged, provides a factual basis from which it may be inferred that the free will of the petitioner may have been overborne as he claims. The resolution of this claim of duress in this case is for the grievance panel not the court.

Under the City's formalistic interpretation, the termination review ends simply upon finding a resignation letter in the file without there ever being an inquiry into the circumstances of the resignation letter's production. Consider

an extreme example; assume that the resignation letter was alleged to be forged; would the employee be precluded from proving the forgery in a grievance hearing?

Where a city employee is presented with two options, resign or be fired, and he voluntarily decides to resign, then that voluntary resignation does not present a grievable issue, because the employee weighed the options and made his decision. If the panel determines Rust voluntarily decided to resign upon being given options of resign or be fired, then the inquiry will end. However, if the grievance panel finds that his resignation was procured by duress, that is tantamount to his being discharged, in which case the grievance panel shall proceed to hear Rust's grievance of his discharge.

Rust's grievance statement does not present a case of constructive discharge; therefore, it is not necessary to decide whether a constructive discharge case presents a grievable issue. *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996) (claim that employer intended to induce the petitioner to quit presented an ADEA claim) *citing, Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986)), which is relied upon by the Petitioner, has no application to this case.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the parties shall apply the City's Grievance Procedure to the separation of Officer Rust from the Winchester City Police Department and a hearing panel shall be convened to hear Rust's grievance about his separation from his employment with the Winchester City Police Department. If the panel determines that Rust voluntarily decided to resign upon being given options of resign or be fired, then the inquiry will end, and the grievance panel will adjourn, because voluntary resignations are not grievable. However, if the grievance panel finds that Rust's resignation was procured by duress in accordance with the principles set forth in this order, that is tantamount to his being discharged, in which case the grievance panel shall proceed to hear Rust's grievance of his discharge from the Winchester Police Department, subsumed within this issue is his allegation of retaliation.