# CIRCUIT COURT OF THE CITY OF ROANOKE

J. R. Drewery

   v.

City of Roanoke

Case No. CL01-748

Scott Altizer

   v.

City of Roanoke

Case No. CL01-749

Susan A. Camper

   v.

City of Roanoke

Case No. CL01-769

September 7, 2001

By Judge Clifford R. Weckstein

Three Roanoke City police officers have appealed the City Manager's determination that complaints they have made are not "grievable." The question for judicial review is a narrow one. I cannot decide whether the officers' complaints have merit; I review only the decision that the officers failed to state a claim for which relief can be granted under the City's grievance procedure.

Officer J. R. Drewery, Detective Scott Altizer, and Officer Susan A. Camper, the grievants, hold the rank of senior police officer in the Roanoke City police department. In separate complaints, they attempted to avail themselves of the grievance procedure adopted by the City pursuant to the provisions of Virginia Code §§ 15.2-1506 *et seq.* and Roanoke City Code § 2-61.1. Each officer alleged that, on June 13, 2001, two other officers were promoted to sergeant, while she or he was passed over for promotion for less qualified candidates. Each officer alleged that the police department failed to follow and unfairly applied its published promotional policies and procedures. The City Manager determined that these complaints could not be pursued in grievance proceedings, and the officers appealed that determination, pursuant to the City's Personnel Operating Procedure (POP) # 6, § 5(b). *Cf.* Va. Code § 15.2-1507(A)(9). The state law under which the City adopted its grievance procedure requires the court to determine "whether the grievance qualifies for a panel hearing." Va. Code § 15.2-1507(A)(9)(b). The court may affirm the decision of the City Manager, or reverse or modify her decision. POP # 6 § (5)(b). Under the City's operating procedures, and as state law requires, this court's decision is final and cannot be appealed. POP # 5(C); *see* Va. Code § 15.2-1507(A)(9)(b); *City of Danville v. Franklin,* 234 Va. 275, 361 S.E.2d 634 (1987).

As the City's grievance procedure mandates, all three officers met with their immediate supervisors on June 28, 2001, for "an informal, initial processing of an employee complaint … through a nonwritten, discussion format." POP # 6, §§ (7)(a), (8)(a). Since these meetings did not resolve their grievances, each officer, following the procedures set out in POP # 6, § 7, filed on that day a written complaint, using a form supplied by the City. The complaints are substantially identical. (Each complaint contains a table comparing some background characteristics of the grievant and of the two officers chosen for promotion; each complaint states the grievant's ranking at the conclusion of the Sergeant's Assessment Center. In all other respects, the complaints are identical.) After the City Manager decided that each complaint was "nongrievable," the officers noted their separate appeals. The three officers are represented by the same lawyer; the same assistant City Attorney represents the City in all three cases. By agreement of counsel, the three

appeals were heard by the court at the same time. Following this lead, I decide these three separate cases in a single opinion letter.

A "grievance," as defined in Roanoke City's operating procedures, is "a complaint or dispute by an employee relating to his or her employment," including, but not limited to "the application of personnel policies, procedures, rules, and regulations." However, complaints about "failure to promote," are "nongrievable," "except where the employee can show that established promotional policies or procedures were not followed or applied fairly," since "management retains the exclusive right to manage the affairs and operations of City government." POP # 6, §§ 2, 3(a)(4).

The threshold inquiry into whether a complaint is "grievable" determines whether the employee is entitled to proceed on the path toward review and resolution of the merits of her or his complaint.

Virginia has long-established rules by which courts test the sufficiency of factual allegations to determine whether, in a civil suit, a plaintiff has stated a claim upon which relief can be granted. The Supreme Court has at least implied that these standards apply to a review of a public school teacher's grievance, *see York County School Board v. Epperson*, 246 Va. 214, 220-22, 435 S.E.2d 647 (1993), and I am of opinion that the same standards appropriately are applied when considering whether a municipal employee states a claim for which relief can be granted in grievance proceedings: To state a claim that is grievable, the employee must allege facts from which a right to relief can be inferred; conclusory statements (for example, statements that a particular rule, regulation, or procedure was violated) are insufficient. *See Epperson, id.* The employee's factual assertions must be treated as true, the employee must be given the benefit of all inferences that fairly can be drawn from the facts alleged; one must also assume the truth of all assertions of fact that can be "fairly and justly inferred" from the employee's complaint. However, the employee is not entitled to the assumption that his or her legal theories are correct. *See Breeding v. Hensley*, 258 Va. 207, 211-12, 519 S.E.2d 369 (1999); *Runion v. Helvestine*, 256 Va. 1, 7, 501 S.E.2d 411 (1998); *Ward's Equipment, Inc., v. New Holland North Am., Inc.*, 254 Va. 379, 383, 493 S.E.2d 516 (1997); *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 485 S.E.2d 140 (1997); *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717 (1988).

In the "statement of grievance" that each of the three complaining officers filed, she or he wrote that "the basis for the complaint is a violation of Police Department Operational Directive # 2.3.3, Section II, Part C (Promotions), as a result of failing to follow promotional policy. Also, I contend that Operational Directive # 2.3.3, Section III, Part B (Procedures), was unfairly

applied with regards to the promotional procedure." Each statement of grievance was followed by a "summary of details."

The record in each case was duly transmitted to the court and has been filed without objection. The court is to decide these cases based on the record, supplemented by any other evidence that the court in its discretion determines the ends of justice require. POP # 6, § 5(c). The parties relieved me of any need to make this determination. At a hearing on August 24, 2001, documents were admitted in evidence without objection, and each party accepted the opposing party's proffer of evidence, that is, each agreed that the opposing party would present the evidence that the party's attorney proffered. The parties stipulated that the documents and proffered testimony are in evidence, for whatever weight and consideration the court determines to give them. With his post-hearing legal argument, counsel for the officers submitted affidavits (with attachments) from each of the grievants and an affidavit from a former police officer. Agreeing with the City, I have not considered this material.

The record includes police department Operational Directive (OD) # 2.3.3, dated December 8, 1999, as "reviewed/revised" through June 15, 2001. Although the parties disagree about the timing and dissemination of revisions to this OD, they agree that, at all relevant times, the department's Operational Directive required that sergeants be selected from among the ranks of serving officers and that the department was required to follow these when promoting eligible officers to the rank of sergeant.

First, candidates for promotion must take a written screening test administered by the Department of Human Resources. "The top 24 candidates will be determined by the passing scores attained. This group of candidates shall then participate in the Assessment Center." OD # 2.3.3 § III(B)(1)(b)(1).

Next, this group of candidates is evaluated in an "Assessment Center" administered by the Department of Personnel Management. This Assessment Center must be formulated and designed in accordance with specified standards and goals. OD # 2.3.3 § III(B)(1)(b)(2) and § III(B)(2)(b)(1)-(10). A candidate's performance in the Assessment Center is that candidate's "examination score" in the competition for promotion. OD # 2.3.3 § III(B)(1)(b)(2).

The Department of Human Resources then sends the chief of police a list of the candidates for promotion, ranked in order of their examination scores. The top six candidates (or, if there were fewer than six, all of the candidates who met the OD's time of service requirements), are certified as "eligible for promotion." OD # 2.3.3 § II(A)(4)(a) and (b); § III(B)(1)(a).

The chief then chooses for promotion to each vacant sergeant's position "the most qualified applicant" from among the persons so certified, "based

upon a complete review of specific elements," some (but not necessarily all) of which are specifically set out. OD # 2.3.3 § II(C) and § III(A)(5).

Each of the grievants asserted "that I was passed over for promotion for less qualified candidates," *i.e.* that the chief did not choose "the most qualified applicant." To support that assertion, each grievant incorporated in his or her complaint a table, comparing the grievant's "qualifications" with those of the two officers chosen for promotion. As the City Manager aptly observed, an employee's subjective belief that he or she is more qualified for promotion than another applicant cannot serve as the basis for a cognizable grievance. A grievant's statement that she or he is "more qualified" than anyone else, or indeed, the assertion that she or he was the "best qualified applicant," is a mere conclusory statement, rather than a statement of fact. *See Epperson, supra,* 246 Va. at 219.

A grievant's submission of supporting materials cannot alter this. The police department's operational directives require the chief to exercise discretion, to make subjective judgments about the weight to give to each candidate's strengths and weaknesses. At the same time that the OD mandates that the chief completely review "specific elements" when considering the candidates' qualifications, it states that all of those elements are not enumerated in the published directive. The department's chief, "management," under OD # 6, is required to exercise judgment about which, if any, additional elements to consider and about the weight and effect of all of the elements considered in determining the qualifications needed for the vacant position and thus in deciding who among the persons on the promotion list is "the most qualified applicant." No matter how much supporting material a grievant might submit to demonstrate what her or his qualifications are relative to any other candidate for promotion, no grievance panel or court can substitute its judgment for that of the chief.

The City Manager correctly determined that the grievance procedure cannot be used to challenge a management decision about which applicant for a position is "the most qualified" or about whether any candidate for promotion is "less qualified" than another. As the City Manager wrote, this "would eviscerate the grievance procedure exception that promotions are not grievable." The grievants do not qualify for panel hearings on their assertion "that I was passed over for promotion for less qualified candidates," *i.e.*, that the chief did not choose "the most qualified applicant." This, however, does not end the inquiry.

Taking the complaints as true, the following facts have been presented by the grievants: E. P. Charles, one of the two officers promoted to sergeant on June 13, ranked 25th on the screening test administered by the Department of

Human Resources. He was not, then, a member of "this group of candidates [which] shall then participate in the Assessment Center." When an officer who was among the top 24 withdrew from consideration, Officer Charles was "moved into the 24th spot," and allowed to participate in the Assessment Center. The operational directives contain no provision authorizing further participation in the promotion process by a person whose screening test score was not among the "top 24 candidates [as] determined by the passing scores attained." Allowing such a person to participate departs from established promotional procedure. The established procedure is exemplified by what happened in 1997 when a particular officer withdrew his name from consideration for promotion to sergeant and "there was no substitute supplied for his position."

The City Manager treated this as a separate complaint and concluded that it was time-barred. She wrote that "the Assessment Center testing took place on May 15, 2001. It appears that the grievance was filed on June 28, 2001. Thus, a considerable period of time has elapsed before the grievance was filed contesting [Officer Charles's] placement on the list. The City's Grievance Procedure requires that all grievances be initiated 'within twenty (20) calendar days after the event giving rise to the grievance.' Section 6(a) of Personnel Operating Procedure No. 6. Moreover, the grievance procedure provides that 'failure to request the informal meeting with the immediate supervisor within the time specified in this section shall be a bar to the procedure."

Officer Charles's "placement on the list," however, was not "the event giving rise to the grievance." The events which gave rise to the grievance took place on June 13, when he and Officer C. L. McCoy were promoted, and Officer Camper, Detective Altizer, and Officer Drewery were not. Nor was Charles's placement on the list an event about which Altizer, Camper, or Drewery would have had standing to file "a complaint ... relating to *his or her employment*," under POP # 6 § (2)(a) (emphasis added). Officer Charles's inclusion in the group of 24 who participated in the Assessment Center had, at best, a potential future relationship to, or effect upon, the employment of Drewery, Camper, and Altizer. That potential ripened into something about which they had standing to complain only after the Assessment Center was completed: Altizer, Camper, Charles, and Drewery were then ranked among the top six candidates for promotion for sergeant; the officer who had been 25th after the preliminary testing was promoted, while the grievants were not. With regard to the persons allowed to participate in the Assessment Center, if Charles had not, at the end, been ranked among the top six candidates, the grievants would have had nothing about which to complain; even then, had Charles not been promoted, the grievants would have had nothing about which

to complain. *See Virginia Beach Beautification Commission v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986).

The City's decision to allow Officer Charles to participate in the Assessment Center process was, when that decision was made, not anything that Drewery, Camper, or Altizer could have "grieved." A grievance about that action would have been comparable to a grievance about the decision to transfer another officer from the patrol division to the detective division, a personnel decision "relating to his or her [the grievant's] employment" no more, and no more directly, than it "related to [the] employment" of every other member of the department; a decision clearly within the discretion of "management," and outside of the ambit of the grievance procedure. *Cf. Tazewell County Sch. Bd. v. Gillenwater*, 241 Va. 166, 400 S.E.2d 199 (1991).

The twenty-day time bar in POP # 6 is analogous to the bar of a statute of limitations. "It is well settled … that the statute begins to run when the right of action accrues." *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 S.E.2d 316 (1989), *quoting Westminster Boykins Corp. v. Weldon, Inc.*, 221 Va. 81, 85, 266 S.E.2d 887, 889 (1980). When a person claims that he or she has been injured by another's wrongful act, the right of action accrues on the date that she or he sustains any injury, however slight. *Westminster Investing, supra,* 237 Va. at 546. If any wrongful act(s) cognizable under the grievance procedure caused injury to Camper, Altizer, or Drewery, the injury occurred, and the right, if any, to initiate the grievance procedure accrued, on June 13, 2001, and not on the earlier date when Charles was allowed to participate in the Assessment Center. The City Manager therefore erred in concluding that consideration of these claims was time-barred.

Treating each grievant's factual assertions as true, giving the grievants the benefit of all inferences that fairly can be drawn from the facts alleged and accepting as true all assertions of fact that fairly and justly can be inferred from their complaints, the court finds that the complaints contain allegations of fact sufficient to permit the grievants to proceed on their claim that the City failed to follow its established policies and procedures when the chief of police made promotion decisions on June 13, 2001. The grievances qualify for a panel hearing. Va. Code § 15.2-1507(A)(9)(b).

(Certainly, the complaints contain statements of fact from which one could infer that "moving up" officers on promotion lists violates no established policy or procedure. However, and to reiterate, the grievants must be given the benefit of every inference that fairly can be drawn from the facts asserted and implied; the complaints must be read in the light most favorable to the grievants. The court cannot determine any facts in these cases, nor decide whether any of the grievants' complaints have merit.)

The "summary of details" that is a part of each grievant's complaint fairly can be read to divide each complaint into two subcomplaints: (i) that established promotional policies or procedures were *not followed* when McCoy or Charles, rather than the grievant, was selected as the "most qualified applicant" for one of the positions filled on June 13; and (ii) that established promotional policies or procedures were *not applied fairly* when the department promoted to sergeant an officer who had not ranked among the top 24 candidates after the preliminary screening test. At bar, the grievants' attorney argued that Drewery, Camper, and Altizer each "grieved" the June 13 decision to promote Charles and McCoy and not to promote him or her on the basis that established promotional policies or procedures were not followed or applied fairly and that the court, therefore, should in the interests of justice be able to consider the grievants' proffered evidence in support of their contention that their complaints are grievable. He also argued that, in grievance panel proceedings that would follow upon a decision in favor of the grievants, they should be able to present any probative evidence that supported this basic contention.

According to the stipulation, the grievants would offer testimony about personal friendship between the chief of police and one of the officers who was promoted; that she was promoted despite the fact that she had protested that she was "not ready" to be a sergeant; the grievants would offer other evidence from which the trier of fact could conclude that the decision to promote that officer was made on a basis other than merit. It was further stipulated that the City would, if such evidence were presented, offer evidence in rebuttal, including testimony that the promotion decision was based on nothing but merit.

The parties further stipulated as follows.

A police department operational directive OD # 2.3.3 is the relevant departmental directive and is to be considered in these cases, notwithstanding language that the policy it contains "shall not apply in any criminal or civil proceedings."

As promulgated December 8, 1999, OD # 2.3.3(II)(C) required that, after selecting the most qualified applicant from candidate lists established by the Department of Personnel, "the Chief will submit to the Manager of Personnel a written explanation for each promotional decision."

On June 14, 2001, the day after the promotion decisions were made, Sgt. C. C. Perkins, the department's accreditation manager, circulated throughout the department a memo about revised, rescinded, and merged operational directives. In that memo, Sgt. Perkins stated that he was providing a summary of "every operational directive change since January 2000." In bold-faced

capital letters, Sgt. Perkins' memo stated that "the policy index is complete and should be current." That memo did not show that OD # 2.3.3 had been modified.

The grievants would offer testimony that, when the promotion decisions were made, OD # 2.3.3, as available in departmental manuals and "on line" through the department's networked computers, contained the sentence requiring the chief to submit a written explanation for each promotional decision.

A revision to OD # 2.3.3, bearing the legend *"Reviewed/Revised 05/04/01 CCP"* (i.e. Sgt. C. C. Perkins), shows, in bold-faced italics, substitution of the name Department of Human Resources for Department of Personnel in subsection (II)(C). The sentence requiring the chief to explain promotional decisions in writing is omitted from that revision, although the revision does not in any way show that that provision had been rescinded or deleted.

Another revision of OD # 2.3.3, *"Reviewed/ Revised 06/15/01 ccp"* was filed with one or more of the grievances on June 28, 2001. Subsection (II)(C) in the June 15 revision is the same as in the May 4 version: "Human Resources" is italicized and in bold face; the sentence requiring written explanations is missing, without any indication that it ever had appeared in the operational directive.

The City would offer testimony that OD # 2.3.3 was omitted from Sgt. Perkins' June 14 memo by mistake.

The City Attorney correctly points out that changes in personnel policy and procedure are not subject to grievance and that the grievants have no due process rights to particular procedures. *Cf. County of Giles v. Wines,* 262 Va. 68, 546 S.E.2d 721 (2001). This does not mean, however, that a grievance panel could not find the evidence about OD # 2.3.3 relevant to an inquiry into whether or not established promotional policies or procedures were followed or applied fairly.

When the City Manager made her determination that these complaints were not "grievable," she was, of necessity, restricted to the four corners of the grievants' written complaints, and she understandably approached the complaints in the way that the grievants organized them. If the City Manager had been presented with these same complaints, organized in the way that they have been analyzed by counsel and court, or, if the written complaints reviewed by the City Manager had contained the allegations of fact presented to the court by proffer on August 24, she might well have determined the "grievability" of each officer's complaint in a different way. However, as the Supreme Court remarked in a different context, the grievants "are non-lawyers. It is not reasonable, therefore, to expect [them] to employ language

that would 'meet the standards of the most efficient legal technician'." *Angle v. Overton*, 235 Va. 103, 105, 365 S.E.2d 758 (1988), quoting *Narrows v. Clear-View Cable TV*, 227 Va. 272, 281, 315 S.E.2d 835, *cert. denied*, 469 U.S. 925 (1984). The City Manager, required by POP # 6 to make her determination within only ten days after the question reached her, had neither the benefit of hearing and argument, nor the opportunity to research, read, and consider cases that might be of precedential value. We are, however, beyond that point. I have had those benefits and opportunities, as well as fifteen days from the date of hearing within which to render my decision, and, unlike the City Manager, I have not had to juggle adjudicative responsibilities and the responsibilities of serving as executive branch head, chief administrator, and operating officer of a multimillion dollar enterprise that has nearly 100,000 owners. I have been able to confine my analysis of the "grievability" of these three complaints to the four corners of each document, and, for the reasons stated above, I have concluded that Officers Camper and Drewery and Detective Altizer have stated claims upon which relief can be granted in the City's grievance process. In accordance with governing state law, the court determines that each grievance qualifies for a panel hearing. Va. Code § 15.2-1507(A)(9)(b).

I have searched without success for reported decisions from any jurisdiction that might address the question of whether each grievant may simply present to the panel his or her complaint that the June 13 decision to promote Charles and McCoy and not to promote him or her failed to follow, or to apply fairly, the department's established promotional policies or procedures, or whether the grievants will be restricted, in presenting their cases to the grievance panel, to the manner in which they organized their complaints when they filed them. Counsel, given only a few days after the hearing to submit authorities, have not cited any cases on point.

There are, I think, several reasons for this lack of appellate guidance. One, of course, is that judicial decisions under statutory schemes like Virginia's are nonappealable. Another is that grievance decisions in many states reach court only after binding arbitration hearings or pursuant to procedures mandated by union contracts. Such cases are immaterial to review of grievances by public employees in Virginia. *See School Board v. Parham*, 218 Va. 950, 243 S.E.2d 468 (1978).

I perceive, however, that the major reason for this dearth of authorities is the public policy reflected in grievance procedures like those adopted by the City of Roanoke. These procedures are intended to encourage prompt, informal, and fair resolution of disputes that may arise between the government and its employees. *See, e.g.*, POP # 6(1). Grievance "panel

hearings are intended to be informal, administrative proceedings, not judicial proceedings with the formalities of court proceedings." At the beginning of the hearing, the panel may ask that the parties clarify the issues involved. The panel determines what evidence will be admissible, without regard to burden of proof or order of presentation of evidence, assuring that all parties are afforded a full and equal opportunity to present their evidence. The hearing is not closed until all parties tell the chairman that they have no further proofs to offer or witnesses to be heard. POP # 6(13)(a), (f), (h), and (k); *also cf. Murphy v. Norfolk Community Services Bd.*, 260 Va. 334, 533 S.E.2d 922 (2000). The proposition that employee grievances ought to be more speedily and less formally resolved than other cases is reflected in the time constraints contained in the City's procedures, in the ability of the parties to waive all deadlines after the initial complaint is made, *id.*, and in the fact that appellate review is precluded.

In a letter dated August 27, 2001, counsel for the grievants requested that, if the court perceived any deficiency in the *pro se* complaints filed by Officers Drewery and Camper and Detective Altizer, they be granted "leave to amend their grievances or to conform their grievances to the evidence."

In civil cases, "leave to amend shall be liberally granted in furtherance of the ends of justice." Rule 1:8. A trial court that fails to allow amendments is likely to have abused its discretion. *See, e.g., Peterson v. Castano*, 260 Va. 299, 534 S.E.2d 736 (2000); *Mortarino v. Consultant Engineering Services, Inc.*, 251 Va. 289, 467 S.E.2d 778 (1996). The General Assembly has long commanded that "if, at the trial of any action, there appears to be a variance between the evidence and the allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, on such terms as to the payment of costs or postponement of the trial, or both, as it may deem reasonable. Or, instead of the pleadings being amended, the court may direct the jury to find the facts, and, after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case." Va. Code § 8.01-377.

In criminal cases, at any time before verdict, the Commonwealth's Attorney is permitted to amend the indictment, if it might be defective or there might be any variance between the allegations in the indictment and the evidence that the Commonwealth presented. Va. Code § 19.2-231. The rules for presentation of civil or criminal cases in court are, as POP # 6 recognizes, more formal, strict, and stringent than those which apply in grievance hearings. The policy reflected in POP # 6 cannot rationally be construed to provide grievants with fewer rights to have their complaints considered

"according to the right of the case" than civil litigants and prosecutors have in presenting their cases. Furthermore, both the General Assembly, in enabling legislation, and the City of Roanoke, in POP # 6, § 5(c), require the court, reviewing a determination that a complaint is nongrievable, to admit such evidence as the ends of justice require. The rules of statutory interpretation would not allow a reading of the law which effectively precluded a grievance complaint that is heard by a panel after judicial review from being amended to conform to the evidence that was presented to the court. *See Natrella v. Board of Zoning Appeals*, 231 Va. 451, 461, 345 S.E.2d 295 (1986); *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61 (1984).

Based upon all of the foregoing, and consistently with the policy embodied in POP # 6, it is therefore the judgment of the court that:

1. The City Manager's decision that these three complaints are not grievable is reversed.

2. Each of these grievances qualifies for a panel hearing. This determination does not preclude the parties from returning to the earlier steps of the grievance procedure, if they be so advised.

3. Each grievant will have the opportunity to present such evidence as the panel determines is appropriate in support of the grievant's complaint that the police department, in its June 13, 2001, decision to promote Officers Charles and McCoy, and not to promote the grievant, failed to follow, or to apply fairly, the police department's established promotional policies or procedures.

4. However, the panel will not have the prerogative to determine which candidate for promotion to either of the positions filled on June 13, 2001, was "the most qualified," nor to determine whether any candidate for promotion was better, or less, qualified than any other candidate. The grievance panel does not have the power to make management decisions. However, the panel is not precluded from admitting any evidence, including evidence about employee qualifications, that it determines is relevant to the question of whether established promotional policies or procedures were not followed or were applied unfairly.