Present:   All the Justices

DONNA J. GAMACHE, M.D., ET AL.
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 032321                September 17, 2004

CRAIG ALLEN

        FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                    John W. Scott, Jr., Judge

                                I.

    In this appeal of a judgment entered in favor of

plaintiff in an action for medical negligence against two

health care providers, we consider whether the circuit court

erred by refusing to permit defendants to cross-examine

plaintiff and his witnesses on certain issues that related to

his claim for damages.

                                II.

                                A.

    Plaintiff, Craig Allen, filed his motion for judgment

against Donna J. Gamache, M.D., her employer, Mid-Atlantic

Health Alliance, Inc., t/a Lee's Hill Medical Associates, and

another physician, Timothy A. Powell, M.D.  Plaintiff alleged

that the defendants breached certain duties owed to him by

failing to diagnose and treat a disease that affected his

cervical spine.

    Prior to trial, plaintiff filed motions in limine.

Plaintiff informed the circuit court that he intended to

present evidence that would permit the jury to conclude that he attempted to commit suicide in April 2002 and that this act was proximately caused by the negligence of the health care providers. He also informed the court that the health care providers intended to present evidence that plaintiff's attempt to commit suicide was related to other factors, specifically, his wife's alleged abuse of narcotics and his wife's alleged acts of self-mutilation. Defendants asserted in the circuit court that they were entitled to show the jury that these acts caused plaintiff to attempt to commit suicide. The court granted the motions in limine. The court ruled that defendants could present evidence regarding depression that plaintiff's wife suffered, but they could not present evidence of her alleged abuse of narcotics or her alleged acts of self-mutilation.

B.

During a jury trial, plaintiff presented the following evidence. Plaintiff met with Dr. Gamache on June 22, 2000. He informed her that he had experienced mild anxiety and that he had used a drug, Ativan (a brand name for Lorazepam), that had been prescribed by his former physician. Dr. Gamache prescribed a different anti-anxiety medication, BuSpar (buspirone hydrochloride), for plaintiff.

2

On July 25, 2000, plaintiff placed a telephone call to Dr. Gamache's office, and he complained of muscle aches, numbness, and "pins-and-needles" sensations in his arms and legs. He did not speak with Dr. Gamache, but he spoke with a receptionist who informed plaintiff that he was possibly experiencing symptoms associated with the use of BuSpar and that he should decrease the daily dosage.

Even though plaintiff decreased his dosage of BuSpar as instructed by Dr. Gamache's office, he experienced additional problems in his arms and legs. On August 17, 2000, plaintiff made another telephone call to Dr. Gamache's office and described his symptoms. Again, he spoke with the receptionist, not with Dr. Gamache. The receptionist informed plaintiff that he was merely experiencing side effects of BuSpar that would last six to eight weeks from the date he discontinued use of that drug.

Later, someone from Dr. Gamache's office contacted plaintiff and asked if he desired to come to the office for an appointment on September 1, 2000. Plaintiff met with Dr. Gamache on September 1 and described his symptoms to her. Dr. Gamache did not examine plaintiff and assured him that he was experiencing symptoms associated with the use of BuSpar. Dr. Gamache did not think plaintiff's complaints constituted an emergency.

3

Plaintiff's condition continued to deteriorate. He had difficulty walking, and he lost his fine motor skills. He contacted Dr. Gamache's office by telephone, and he informed the receptionist that his symptoms had gotten worse. The receptionist told plaintiff that Dr. Gamache could see him in two days. Plaintiff did not accept the appointment because of other commitments.

Plaintiff's condition deteriorated even further. However, plaintiff did not seek alternative medical attention because Dr. Gamache had repeatedly assured him that his symptoms were not significant. Plaintiff's condition became worse and subsequently, plaintiff's wife, Anna K. Allen, took him to the emergency room of the Mary Washington Hospital in Fredericksburg.

Dr. Richard P. Erwin, a neurologist, treated plaintiff while he was a patient at the Mary Washington Hospital. Dr. Erwin's physical examination revealed an abnormality below plaintiff's neck, and Dr. Erwin immediately suspected that plaintiff's spinal cord might have been affected. Dr. Erwin ordered that a magnetic resonance imaging scan (MRI) be taken, and the image revealed an inflammation of plaintiff's spinal cord. Dr. Erwin immediately treated plaintiff with high-dose steroids, and plaintiff was transferred to the Medical College

4

of Virginia Hospitals, where he was diagnosed as having transverse myelitis, an inflammation of the spinal cord.

Dr. Michael Jacobs, an internist, testified that the health care providers breached the standard of care owed to plaintiff because they failed to diagnose his condition in a timely manner. Dr. Douglas Kerr, a neurologist, testified that plaintiff, who now suffers from irreparable neurological damage, could have had his condition arrested had the physicians diagnosed and treated his condition sooner.

Plaintiff presented evidence that he incurred physical and emotional damages, including major depression, proximately caused by the defendants' acts of medical negligence. Dr. Murry J. Cohen, a psychiatrist who qualified as an expert witness, testified that plaintiff suffered from major depression, that plaintiff attempted to commit suicide in 2002, and that this attempt was caused by his physical disabilities associated with transverse myelitis.

Dr. Cohen testified that plaintiff suffered from depression, which was caused by major "stressors." Dr. Cohen stated, "I thought it was . . . clearly the fact that he was suffering from a very severe, albeit not diagnosed, neurological illness that was causing great distress, physically and emotionally, and was interfering with his functioning down the line. And it was clear to me that . . .

5

without question, that was the major stressor and the major precipitant."  Dr. Cohen acknowledged that even though plaintiff was dealing with several stressors in his life, including his job, financial problems, his marriage, and relationships, Cohen described these stressors as minor and testified that plaintiff's illness was the major stressor that caused his attempt to commit suicide.

Plaintiff presented evidence that his neurological deficit is profound, his condition will continue to deteriorate, he has incurred in excess of $96,000 in medical expenses, he will require future medical care in excess of $2,500,000, and he has suffered a loss of earning capacity in excess of $1,100,000.

The jury returned a verdict in favor of plaintiff against Dr. Gamache and her employer, Mid-Atlantic Health Care Alliance, in the amount of $6,500,000.  The jury returned a verdict in favor of defendant, Dr. Powell, and he is no longer a party to this proceeding.  Pursuant to Code § 8.01-581.15, the circuit court reduced the jury's verdict to $1,550,000 and entered a judgment confirming the verdict.  Defendants appeal.

### III.

### A.

Defendants asserted in the circuit court, and argue in this Court, that evidence of Mrs. Allen's alleged use of

narcotics and alleged acts of self-mutilation were relevant because the jury could have inferred that plaintiff's attempted suicide was caused by these alleged acts instead of defendants' negligence.  Continuing, defendants contend that the circuit court abused its discretion when it prohibited them from eliciting this testimony on the basis that the probative value of the evidence was outweighed by its prejudicial effect.

Responding, plaintiff states that defendants were allowed to introduce evidence of alternative causes of plaintiff's depression and suicide attempt, such as his financial problems, difficulties with his job, marital strife, and that the circuit court did not abuse its discretion when it prohibited defendants from eliciting the challenged evidence.

Evidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice.  Walker v. Commonwealth, 258 Va. 54, 68, 515 S.E.2d 565, 573 (1999); Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).  In determining whether evidence should be admitted, the circuit court must apply a balancing test to assess the probative value of the evidence and its prejudicial effect.  Dandridge v. Marshall, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004); Brugh v. Jones, 265 Va. 136, 140,

574 S.E.2d 282, 284-85 (2003).  Gray v. Graham, 231 Va. 1, 10, 341 S.E.2d 153, 158 (1986).  This determination, however, rests within the sound discretion of the circuit court and will only be disturbed on appeal upon a showing of an abuse of discretion.  Dandridge, 267 Va. at 596, 594 S.E.2d at 581; Lombard v. Rohrbaugh, 262 Va. 484, 492, 551 S.E.2d 349, 353 (2001); Burns v. Commonwealth, 261 Va. 307, 332, 541 S.E.2d 872, 889 (2001); Walker, 258 Va. at 68, 515 at 573; Ingles v. Diveley, 246 Va. 244, 250, 435 S.E.2d 641, 644 (1993).

Applying these principles, we hold that the circuit court abused its discretion by refusing to permit defendants to elicit evidence that plaintiff's depression and attempted suicide may have been related to his wife's alleged acts of narcotics abuse and alleged acts of self-mutilation.  The jury was entitled to consider this evidence, which was relevant, even though this evidence may be potentially damaging to plaintiff.

In the context of the record before this Court, the probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice to plaintiff.  Plaintiff presented evidence, as an element of his damages, that the defendants' acts of negligence proximately caused his attempt to commit suicide.  The defendants, therefore, are entitled to present evidence that other

8

significant events that occurred in plaintiff's life for which defendants were not responsible were the proximate cause of plaintiff's attempted suicide.  And, even though, as plaintiff asserts, the jury was aware of alleged alternative causes of his depression and suicide attempt, the jury was not aware of defendants' allegations that plaintiff's wife purportedly abused his narcotic medications and that she purportedly engaged in acts of self-mutilation.

We disagree with plaintiff's contention that this challenged evidence is collateral.  Plaintiff presented evidence that his suicide attempt was caused by the defendants' acts of negligence, and he introduced in evidence the cost of medical treatment associated with the treatment necessitated by the suicide attempt.  The excluded evidence is not collateral, but it is relevant to an element of damages that plaintiff claimed was proximately caused by defendants' acts of negligence.  See Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982).

B.

Defendants sought to present evidence that two physicians, Dr. Erwin and Dr. Barbara Newberg, who had treated plaintiff previously, did not believe that he was trustworthy. Defendants also wanted to elicit evidence that one of plaintiff's former physicians terminated the patient/physician

9

relationship with plaintiff because he had not been truthful with that physician.  Defendants contend that the circuit court abused its discretion by failing to permit them to present this evidence to the jury.

We disagree with the defendants.  Essentially, the defendants sought to challenge plaintiff's veracity by presenting evidence that he had been untruthful with his former physician.  When a litigant impeaches a witness' reputation for truth and veracity, such evidence must be confined to the general reputation of the impeached witness for truth and veracity and may not include the commission of specific acts of untruthfulness or other bad conduct, even though these have bearing on veracity.  Bradley v. Commonwealth, 196 Va. 1126, 1133, 86 S.E.2d 828, 833 (1955); Allen v. Commonwealth, 122 Va. 834, 840, 94 S.E.2d 783, 785 (1918); Langhorne v. Commonwealth, 76 Va. 1012, 1019 (1882).

The circuit court properly refused to permit the defendants to present evidence of plaintiff's veracity. Defendants sought to present evidence of specific alleged acts of untruthfulness, contrary to this Court's well-established precedent.

### C.

Dr. Cohen testified on behalf of the plaintiff.  Among other things, Dr. Cohen discussed plaintiff's depression,

10

attempted suicide, and symptoms, including plaintiff's physical pain. During the defendants' cross-examination of Dr. Cohen, the following colloquy occurred:

> "Q: Is it important that the patient be forthcoming with you when giving a history?
> "A: Yes.
> "Q: And you indicated on direct examination that you did not think that Mr. Allen exaggerated his pain; correct?
> "A: I did not think that; correct.
> "Q: Or you do not think that?
> "A: I do not think that; correct.
>
>      . . . .
>
> "Q: [D]o you believe he has always given you a full and credible history?
> "A: No. I haven't always believed that.
>
>      . . . .
>
> "Q: Has he given you any information that was inconsistent with either information you had heard otherwise or your clinical examination of the patient?
> "[Plaintiff]: Objection, Your Honor, based on previous rulings in this case. That's not something that — the Court has already ruled that's not coming in.
> "[Defendants]: I think the door has been opened. He stated on direct . . . that he does not believe he's exaggerated his pain. And this doctor has said that he's not believed to have always given a full and credible history. I think this is ripe for exploration.
> "[The Court]: I do not believe he used that. Objection is sustained."

Defendants argue that the circuit court abused its discretion when it limited the scope of defendants' cross-examination of Dr. Cohen. We disagree.

11

The circuit court did not abuse its discretion by limiting the scope of defendants' cross-examination. Dr. Cohen's statement that plaintiff failed to consistently provide Dr. Cohen with a full and credible history simply does not contradict Dr. Cohen's observations of plaintiff's pain or statements that plaintiff may have made to Dr. Cohen regarding the extent of plaintiff's pain.

D.

In February 2003, plaintiff was taken to the emergency room at the Mary Washington Hospital in Fredericksburg. He had a decreased level of consciousness and "pinpoint pupils." Dr. Erwin testified that use of narcotics can cause pinpoint pupils and decreased awareness. Hospital personnel performed a urine drug screen test on plaintiff's urine sample, and the test identified the presence of opiates in plaintiff's body. Opiates are narcotic pain medicines. Defendants contend that they were entitled to present expert opinion testimony from Dr. Erwin and Dr. Newberg that plaintiff's hospitalization in February 2003 was the result of a second suicide attempt. We will not consider this argument because defendants did not present an adequate record to this Court, having failed to make a proffer of any opinions that Dr. Erwin and Dr. Newberg would have rendered.

IV.

12

Plaintiff presented evidence that supports the jury's findings that defendants Dr. Gamache and her employer, Mid-Atlantic Health Alliance, breached the standard of care owed to him. Defendants' assignments of error do not challenge the jury's findings that defendants were negligent. Therefore, upon retrial, these findings will be binding upon the defendants, and plaintiff will not be required to establish that the defendants were negligent. Plaintiff will only be required to establish proximate causation and damages. Also, upon retrial, defendants will be permitted to present evidence of plaintiff's wife's alleged acts of narcotics abuse and self-mutilation.

Accordingly, we will affirm that portion of the judgment that confirmed the jury's findings that the defendants were negligent. We will remand this case for a new trial limited to the issues of proximate causation and damages.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded</u>.

JUSTICE LACY, with whom JUSTICE KINSER joins, concurring in part and dissenting in part.

I concur in the majority's conclusions regarding presentation of evidence of Allen's veracity, the cross-examination of Dr. Cohen, and opinion testimony of Drs. Erwin and Newberg; however, I respectfully dissent from the

13

majority's conclusion that the trial court's refusal to allow evidence that Mrs. Allen allegedly abused narcotics and engaged in self-mutilation was reversible error.

The majority opinion recites that defendants argued that Mrs. Allen's alleged use of narcotics and alleged acts of self-mutilation "caused" plaintiff's suicide attempt. Based on this characterization, the majority opinion concludes that defendants were entitled to present evidence that such acts "were the proximate cause of plaintiff's attempted suicide." (Emphasis added.) The record, however, contains no instance in the trial court in which the defendants asserted that Mrs. Allen's alleged acts were the proximate cause of Mr. Allen's suicide attempt.

At trial, defendants argued that the evidence at issue should have been admitted because it showed that the wife's actions were "one of the main motivations for [Allen's] suicide attempt," that Allen's neurological condition "was not his main reason for attempting suicide," and that Mrs. Allen's abuse of narcotics was "one of the reasons" Allen attempted suicide.

Defendants' opening brief before this Court states that at the hearing on Allen's motion in limine Gamache argued that Mrs. Allen's actions "contributed to" Allen's stress and suicide attempt. Defendants also assert on brief that the

14

evidence at issue should have been admitted to show that "a major reason for Allen's suicide attempt" was Mrs. Allen's alleged narcotic abuse and self-mutilation. In their reply brief, the defendants argue that the jury should have had this evidence "to determine whether or not Gamache's treatment of [Allen] 18 months prior was the proximate cause of the suicide attempt." And had the jury had this evidence, "they could well have concluded that Allen was untruthful when he laid all the responsibility for his actions at Gamache's feet."

At no time did the defendants argue that Mrs. Allen's actions were the proximate cause of Allen's suicide attempt. Every argument made refers to Mrs. Allen's acts as additional causes of the attempted suicide; there was no argument presented that the defendants' negligence was not a proximate cause. Indeed, Allen did not argue that Gamache's negligence was the cause of his suicide attempt. Rather, Allen argues such negligence was one of the causes.

A fundamental tenet of Virginia tort law holds that a party is responsible for injuries caused by his negligence even if the acts of others contributed to the injuries unless those other acts constituted an intervening, superseding cause of the injury. Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980); Von Roy v. Whitescarver, 197 Va. 384, 393, 89 S.E.2d 346, 352 (1955). Applying the

15

position taken by the defendants on this issue throughout these proceedings, Mrs. Allen's acts as "a major reason," "one of the reasons," or "one of the main reasons" for Allen's suicide attempt, were only a proximate cause of Allen's injuries resulting from his suicide attempt. Mrs. Allen's alleged actions would not negate Gamache's negligence as a proximate cause of Allen's injuries. Accordingly, I conclude that the failure to admit the evidence in issue was harmless error and I would affirm the judgment of the trial court in its entirety.