COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Senior Judges Annunziata, Clements and Frank

JENNIFER LYNN LEBLANC

v.       Record No. 0155-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JULY 26, 2022

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(J. Martelino, Jr., on brief), for appellant.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.


Counsel for Jennifer Lynn LeBlanc filed a brief on her behalf accompanied by a motion

for leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967).  A

copy of that brief has been furnished to LeBlanc with sufficient time for her to raise any matter

that she chooses.  LeBlanc has not filed any *pro se* supplemental pleadings.  Following a jury

trial, the trial court convicted LeBlanc of perjury.  On appeal, LeBlanc, through counsel, argues

that the trial court erred by admitting certain video evidence and by finding the evidence

sufficient to convict.  We have reviewed the parties' pleadings, fully examined the proceedings,

and determined the case to be wholly without merit as set forth below.  Thus, the panel

unanimously holds that oral argument is unnecessary.  *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

LeBlanc sought a protective order against David Remey, the father of her ten-year-old daughter, A.R., for an incident that occurred at Remey's home on February 16, 2020. The Chesterfield County Circuit Court held a hearing on LeBlanc's protective order on March 31, 2020. At that hearing, LeBlanc testified that she arrived at Remey's home to retrieve A.R. from weekend visitation with Remey. Remey walked A.R. to the car and was "taking forever" to get A.R. situated in the back seat. LeBlanc asked Remey to "please just give [A.R.] her stuff and, you know, go ahead and close the door, and we'll be on our way," at which time Remey "slammed [the] door as hard as he could." LeBlanc testified that Remey then opened the passenger side door and entered the car, moving across to her side. LeBlanc said she told Remey to get out of the car "over and over again" and that he smacked her phone out of her hand and shoved her. Remey yelled at her to "call whoever you want. They're not going to help you. I'm on my property and I can do whatever the . . . ['F'] I want to." Remey was "screaming as loud as he [could] on the side of [her] face," LeBlanc stated, and was so close she could feel his breath on her cheek. LeBlanc claimed that during the incident, Remey repeatedly slapped at her hand and hit her in the shoulder with his shoulder. LeBlanc said that A.R. was terrified. However, after further evidence was presented, the trial court dismissed the protective order.

The Commonwealth indicted LeBlanc on one count of felony perjury for her March 31, 2020 testimony. At trial on that indictment, the Commonwealth read LeBlanc's March 31, 2020 testimony to the jury, and a redacted transcript of that testimony was entered into evidence. Chesterfield County Police Officer A. Knudsen testified that he responded to LeBlanc's 911 call on

- 2 -

the night of the alleged offense. LeBlanc was "upset, elevated, talking very rapidly [and] speaking with her hands," but she did not otherwise report a physical assault. That is, LeBlanc did not claim that Remey had smacked her hands, slapped the phone from her hand, or hit her shoulder. Officer Knudsen also noticed that A.R. appeared calm. Knudsen then spoke with Remey and, based on LeBlanc's and Remey's statements, concluded that no criminal activity occurred. Therefore—in accordance with department policy—he did not activate his body worn camera or review the security footage that Remey offered to show him.

Remey testified that on the night of the incident he walked A.R. to the car and waited while she got settled into the back seat. LeBlanc was "carrying on and telling [him] to get away from her car" or she was going to call the police "and all that kind of stuff." Remey denied entering LeBlanc's car or assaulting her. Remey had four cameras on his property. The encounter was captured on video. Remey testified that the cameras record twenty-four hours a day, seven days a week. He explained that he could watch the video in real time or record it and play it back. The camera software came with an application that allowed him to record segments of the video or take screen shots, but it did not include editing software. After the incident, Remey saved the recorded incident on his laptop, his iPad, and a thumb drive. Remey denied altering or editing the video. He testified that the video "fairly and accurately" depicted the events of February 16, 2020. Remey admitted that his wife had access to the laptop, but he alone had access to the iPad. Remey also acknowledged that his wife and his attorney had access to the thumb drive.

LeBlanc objected to the admission of the video into evidence, arguing that the video was not properly authenticated because of a failure in the chain of custody and the possibility that the video was accessed and edited by a third party. LeBlanc also argued that the video's probative value was outweighed by its prejudice. The trial court overruled LeBlanc's objection and admitted the video.

The video was played for the jury. The video demonstrated that Remey did not enter LeBlanc's car, and it failed to show that an assault occurred.

After the Commonwealth rested its case, LeBlanc moved to strike on two grounds. First, LeBlanc renewed her arguments regarding the video's chain of custody and authentication. LeBlanc contended that there was no information presented by the Commonwealth regarding how the chain of custody for the video was maintained and, thus, that there was potential for access and alteration by third parties. Second, LeBlanc argued that because there was a ten-to-fifteen-second window within the video where Remey's hand movements were obscured by the car, it was too vague to be a piece of evidence that would be sufficient to be the "second witness" needed for proving a perjury charge. The trial court denied LeBlanc's motion to strike.

Patricia Mullaney, an expert from the Department of Forensic Science, testifying for LeBlanc, stated that after conducting a forensic analysis of the video, she concluded that there were no signs of editing. Mullaney noted, however, that her analysis was ultimately inconclusive because she could not compare the "camera original" to the video introduced at trial, thus leaving open the possibility that the video had been altered.

After the defense rested, LeBlanc renewed her motion to strike, which the trial court denied. Following closing arguments, the jury found LeBlanc guilty of perjury. LeBlanc noted this appeal.

ANALYSIS

LeBlanc asserts that the Commonwealth failed to prove the video was not tampered with or otherwise edited by a third party and, therefore, that it was "unduly prejudicial" and inadmissible. She further contends that the evidence was insufficient to support her perjury conviction. We disagree with both assertions.

- 4 -

Admissibility of the Video

"Decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "In conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, including the credibility of the witnesses, and may reverse them only if they are plainly wrong." *Id.* "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"Evidence is admissible if it is both relevant and material." *Castillo v. Commonwealth*, 70 Va. App. 394, 462 (2019) (quoting *Patterson v. Commonwealth*, 62 Va. App. 488, 493 (2013)). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case [and] . . . material if it relates to a matter properly at issue in the case." *Id.* (alterations in original) (quoting *Cousins v. Commonwealth*, 56 Va. App. 257, 271 (2010)). "A [videotape] which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the photographer who made it." *Tirado v. Commonwealth*, 296 Va. 15, 26-27 (2018) (second alteration in original) (quoting *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000)). "Videotapes, like photographs, when properly authenticated, may be admitted under either of two theories: '(1) to illustrate the testimony of a witness, and (2) as mute, silent, or dumb independent photographic witnesses.'" *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (quoting *Ferguson v. Commonwealth*, 212 Va. 745,

746 (1972)).  A videotape is properly authenticated if accompanied "by evidence sufficient to support a finding that the thing in question is what its proponent claims."  Va. R. Evid. 2:901.

In this case, Remey testified that he purchased the video surveillance system, installed it at his house, and knew how it worked.  The surveillance system included four separate cameras that captured different angles of his property, including his driveway.  Remey set the surveillance timer to record twenty-four hours a day, seven days a week.  The video included a date and time stamp.  The system's software came with an app that allowed him to record segments of the video or take screen shots, but it did not include editing tools.  Thus, Remey knew how to view the footage and make copies of any recordings, but he could not edit the video.  Following the incident, Remey saved the video to his laptop, iPad, and a thumb drive.  He testified that he did not alter the recording in any way and, after reviewing the video for the jury trial, stated that it was a true and accurate representation of what happened on February 16, 2020.  Remey's testimony, accepted as true, provided the trial court with sufficient evidence to find that the video was what Remey claimed it to be:  an accurate recording of the incident that occurred in his driveway on February 16, 2020.  The video was properly authenticated.

LeBlanc's suggestion that the video could have been altered was purely speculative and unsubstantiated.  LeBlanc did not prove that the video was edited or otherwise inaccurate.  In fact, her own expert witness analyzed the video and found no detectable signs of editing.  In any case, LeBlanc presented her concerns about possible tampering to the jury, which clearly rejected that assertion.  "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence."  *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990).  Indeed, "[o]nce the threshold for proving admissibility" is met, questions concerning the accuracy of a videotape are relevant "only to the jury's assessment of the weight to give it."  *McDaniel v. Commonwealth*, 73

Va. App. 299, 316 (2021). Having found that the video was properly authenticated, the trial court did not err in finding that the possibility of tampering went to the weight of the evidence rather than to its admissibility.

Finally, contrary to LeBlanc's assertion, the video's probative value far outweighed any prejudice to the accused. In accordance with Rule 2:403,[1] "[e]vidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice." *Gamache v. Allen*, 268 Va. 222, 227 (2004). Thus, "[i]n determining whether evidence should be admitted, the circuit court must apply a balancing test to assess the probative value of the evidence and its prejudicial effect." *Id.* "[T]he mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test. Rather, a trial court must determine whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Lee v. Spoden*, 290 Va. 235, 252 (2015).

LeBlanc was on trial for perjury. She had testified at the March 31, 2020 protective order hearing that Remey entered her vehicle, repeatedly slapped at her hands, shoved her with his shoulder, and screamed in her face. The protective order she sought would have excluded contact between Remey and A.R., as well as between Remey and LeBlanc. The video was a witness to what actually happened on February 16, 2020, and it corroborated Remey's version of the events. Thus, it was probative of the very question the jury was called upon to answer—whether LeBlanc lied under oath at the March 31, 2020 hearing. The fact that it was also prejudicial to LeBlanc's case is of no moment. "The requirement under Rule 2:403 that only 'unfair' prejudice may be

---

[1] "Relevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact . . . ." Va. Rule Evid. 2:403(a).

considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party." *Id.*, 290 Va. at 251.

In sum, the record does not support LeBlanc's assertion that the videotape was altered. The video was properly authenticated and probative to the question of whether LeBlanc lied under oath at the March 31, 2020 hearing. The probative value of the tape far outweighed its prejudice. Thus, the trial court did not abuse its discretion in admitting the video into evidence.

Sufficiency of the Evidence

LeBlanc argues that, even if the video was properly admitted, the evidence was insufficient to prove she committed perjury.

"When considering a challenge to the sufficiency of the evidence supporting a conviction, an appellate court reviews the facts 'in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 501 (2020) (quoting *Gerald*, 295 Va. at 472). In doing so, an appellate court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). We will "only reverse the judgment of the circuit court when its decision is plainly wrong or without evidence to support it." *Hillman v. Commonwealth*, 68 Va. App. 585, 592 (2018) (quoting *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014)). In reviewing the verdict, "an appellate court 'does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Fletcher*, 72 Va. App. at 501 (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). The relevant question is "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 501-02 (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

"If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury, punishable as a Class 5 felony." Code § 18.2-434. "Therefore, in order to sustain a perjury conviction, the Commonwealth has the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant willfully swore falsely; and (3) that the facts to which the defendant swore falsely were material to a proper matter of inquiry." *Gerald*, 295 Va. at 479. "To be material, '[t]he testimony must have been relevant in the trial of the case, either to the main issue or some collateral issue.'" *Id.* at 479-80 (quoting *Holz v. Commonwealth*, 220 Va. 876, 881 (1980)).

Here, the indictment for perjury arose from LeBlanc's testimony at the March 31, 2020 hearing in which she sought a protective order against Remey for an alleged assault. LeBlanc testified that Remey physically attacked her. She asserted that Remey "went into the passenger side of [her] car and came all the way across." She claimed that while Remey was inside her car, he repeatedly smacked her phone out of her hand and was "screaming as loud as he [could] on the side of [her] face." LeBlanc claimed that during the incident, Remey repeatedly hit her in the shoulder with his shoulder. However, the evidence supports the jury's finding that LeBlanc willfully lied and that those events did not occur. Indeed, Officer Knudsen testified that LeBlanc made no mention of any physical altercation when he responded to her 911 call, and Remey testified that there was no physical altercation. Remey's testimony was corroborated by the video of the February 16, 2020 incident, which showed that Remey did not enter LeBlanc's car and that no physical altercation occurred.

In short, the jury's finding of guilt was not plainly wrong or without evidence to support it. LeBlanc committed perjury. Thus, we affirm the conviction.

CONCLUSION

Accordingly, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that Jennifer Lynn LeBlanc is now proceeding without the assistance of counsel in this matter and is representing herself on any further proceedings or appeal.

*Affirmed.*