COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia

UNPUBLISHED

JOHN IRVIN, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 1331-21-2          CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 1, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
F.G. Rockwell, III, Judge

Stephen K. Armstrong (Armstrong Law LLC, on briefs), for
appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


John Irvin, Jr., appeals his conviction for rape in violation of Code § 18.2-61.  He argues on

appeal that the trial court erred in denying his motion for a continuance, not allowing him "to

question the complaining witness about her prior rape allegations against" him, and finding the

evidence sufficient to support the jury's verdict.  For the following reasons, we affirm the

conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On the evening of June 28, 2020, J.B. awoke to loud banging on her front door. Earlier that month, she and the appellant had ended their five-year "off and on" relationship. When J.B. asked who was there, the appellant identified himself. J.B. had been sleeping in the nude, as she normally did, so she put on a robe, opened the door, and told the appellant, "You gotta stop doing this shit." The appellant stepped inside, hugged and kissed J.B., and told her that he "wanted to make things work."

Uninvited, the appellant proceeded to J.B.'s bedroom and sat on her bed. J.B. explained to him that in the morning, she had fainted during a run because of her anemia. After receiving medical attention, J.B., exhausted from the episode, drove home and went to sleep. J.B. told the appellant that she needed to go back to sleep because she had to work the following morning. She expressly told the appellant that she was not going to have sex with him. He responded that he was "not over here for that" and only wanted to "cuddle." J.B. removed her robe and got under the covers while the appellant remained on top of the covers and put his leg across J.B.'s body. She did not "feel threatened at that time." The appellant was "rustling around and moving," and when J.B. asked him to stop, he undressed except for his underwear and got under the covers with her. J.B. then fell asleep.

J.B. awoke when she felt the appellant's penis against her buttocks and then he inserted it into her vagina. J.B. repeatedly told the appellant to stop and pushed him away, but he pulled her across the bed and reinserted his penis into her vagina. J.B. continued to tell the appellant to stop

---

[1] "In accordance with familiar principles of appellate review," an appellate court considers "the facts . . . in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of the appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that reasonably may be drawn from that evidence. *Gerald*, 295 Va. at 473.

and kicked him off the bed. She jumped up, retrieved a handgun from her dresser, and fired a "warning shot" into a mirror, ordering the appellant to leave. After the appellant fled the residence, J.B. locked the front door and called the police.

Officer Gabriel Percival of the Chesterfield County Police Department responded to J.B.'s house at 12:20 a.m. He described J.B. as "calm" but noted her "voice was pretty shaky."[2]

Chesterfield County Police Detectives Kirby and Easton interviewed the appellant the next day. The appellant admitted going to J.B.'s house the previous night but said that he and J.B. had consensual intercourse. According to the appellant, when he accused J.B. of having had sex with another man, she became enraged and demanded that he leave. The appellant said that J.B. retrieved a gun and accidentally fired it. He speculated that J.B. accused him of rape because she was afraid she would "get in trouble" for having fired the gun.

The appellant was charged with rape. Before trial, the Commonwealth filed two separate motions *in limine* to preclude the appellant from introducing evidence of J.B.'s prior sexual conduct with third parties and her prior rape allegations against the appellant. Specifically, the Commonwealth asked the trial court to exclude evidence of "alleged false allegations" unless the defense had evidence establishing the falsity of the accusations. The Commonwealth agreed, however, that the prior sexual relationship between the appellant and J.B. was admissible due to their history together. The court permitted the defense to ask J.B. if she made the earlier allegations, noting that the defense would be "stuck with the answer, if any."[3]

On May 18, 2021, the morning of his scheduled jury trial, the appellant made a motion for a continuance. He argued that he needed a continuance so he could interview the officers who

---

[2] Percival's body camera recorded the interview with J.B., and the video was played at trial.

[3] The court found that evidence of sexual contact between J.B. and third parties was not an issue because the appellant said that he did not seek to introduce any such evidence.

investigated the rape accusation that the victim made against him in 2016. He acknowledged that the Commonwealth had disclosed the earlier complaint in discovery. The trial court found that the appellant had known about the 2016 complaint since September 2020 and waited until the morning of trial to raise the issue. The appellant did not explain why he did not interview the officers or investigate the prior allegation further during the eight months between when the Commonwealth disclosed it during discovery and the morning of his trial. The court noted that the unexplained failure to act sooner was not an appropriate basis for a continuance and denied the motion.

During the jury trial, J.B. testified and described her relationship with the appellant as "fine" at first but "demeaning" over time. She said that the appellant was sometimes "very aggressive" and "very jealous." J.B. testified that the appellant physically abused her during sex and had raped her on three prior occasions. She reported only one incident to the police, which was investigated in 2016, but it was not prosecuted. During cross-examination, counsel questioned J.B. at length about all three rape allegations and her decision not to report two of them.

Forensic nurse examiner Susan Womble testified as an expert. She examined J.B. at the hospital after the incident and recovered DNA from J.B.'s body that was linked to the appellant. Womble did not find any visible injuries on J.B. However, she explained that it was "not uncommon" for a sexual assault victim to not have obvious injuries. Womble added that 79% of "acute cases have no visible injury."

The appellant testified in his defense. He denied the current rape allegation and J.B.'s accusations that he raped her three other times. His testimony at trial replicated the statements he made earlier during his police interview.

After the evidence was presented, the appellant made a motion to strike the charge. The court denied the motion. In closing argument to the jury, defense counsel argued that the

evidence did not support the conviction because J.B. was not a credible witness. Counsel suggested that the circumstances of the previous rape allegations were inconsistent and did not make sense.

The jury found the appellant guilty. The court denied the appellant's motion to set aside the verdict. In accordance with the jury's recommendation, the court sentenced him to five years and one day in prison.

ANALYSIS

The appellant raises three assignments of error. First, he claims that the trial court erred by denying his motion for a continuance. Second, he argues that the court denied him the opportunity to ask the victim about her prior rape allegations against him. Third, the appellant contends that the Commonwealth did not present sufficient evidence to support his conviction. We address each of these assignments of error in turn.

I. Continuance

The appellant challenges the trial court's denial of the requested continuance. He argues that because J.B.'s credibility was the central issue in the case, he should have been permitted to interview and possibly subpoena the officers who were involved with investigating the prior rape allegation J.B. had made against him. The appellant asserts that a continuance was necessary so he could "'find out' what caused those detectives to doubt [J.B.'s] credibility and what the underlying issues were." He concludes that the trial court "in essence denied [him] the opportunity to present relevant, probative, and material evidence and testimony in his defense."

"[W]hether to grant or deny 'a motion for a continuance is within the sound discretion of the [trial] court and must be considered in view of the circumstances unique to each case.'" *Bailey v. Commonwealth*, 73 Va. App. 250, 259 (2021) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "An appellate court can reverse only if the trial court committed

an 'abuse of discretion' *and* thereby caused 'resulting prejudice.'" *Cooper v. Commonwealth*, 54 Va. App. 558, 565 (2009) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 722 (2008)). "This 'two-pronged' test . . . has long been the standard under Virginia practice." *Id.* (quoting *Lebedun v. Commonwealth*, 27 Va. App. 697, 712 (1998)). Both an "abuse of discretion *and* resulting prejudice to the movant" are necessary for a reversal. *Haugen*, 274 Va. at 34. "The absence of one renders inconsequential the presence of the other." *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007), *aff'd on other grounds*, 275 Va. 144 (2008).

"In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to gather and make the evidence available at trial." *Smith v. Commonwealth*, 16 Va. App. 630, 636 (1993). "When a defendant makes a last minute request for a continuance, he must demonstrate that exceptional circumstances exist." *Reyes v. Commonwealth*, 68 Va. App. 379, 387 (2018), *aff'd*, 297 Va. 133 (2019).

Despite learning eight months earlier about the prior reported rape allegation, the appellant waited until the morning of his jury trial to ask for time to interview the detectives who investigated that earlier accusation.[4] He did not explain his delay to the court when arguing for the continuance. On the morning of the trial, witnesses were present to testify, a venire had been assembled for the jury trial, and both the prosecutor and the defense attorney were prepared to proceed.

Under the circumstances, the trial court's decision was neither unreasonable nor arbitrary because defense counsel took no steps to gather the evidence he claims was necessary in the

---

[4] We note that the single reported prior allegation was against the appellant.

eight months available before trial and provided no explanation for the delay.[5] *See Johnson v. Commonwealth*, 51 Va. App. 369, 376-77 (2008) (holding that the trial court did not err in refusing the defendant's request for a continuance). On this record, the trial court did not abuse its discretion in denying the appellant's motion for an eleventh-hour continuance.

## II. Prior Accusations

The appellant argues that "the trial court erred when it denied the defense the opportunity to question the complaining witness about her prior rape allegations against" him, both reported and unreported.[6]

This assignment of error is directly contradicted by the record. The trial court ruled that the defense could ask J.B. if she made the earlier allegations and if they were false, noting that the defense would be "stuck with the answer, if any." J.B. testified that the appellant had raped her three times previously but that she had only reported one prior instance to the police. During cross-examination, J.B. acknowledged that the alleged rape she reported in 2016 had not been prosecuted. Counsel questioned J.B. at length about the alleged three previous rapes and her decision not to report two of them. The defense also asked J.B. about her decision to sleep in the nude in the appellant's presence despite her claim that he had raped her before. In closing argument to the jury, counsel argued that the circumstances of the previous rape allegations were

---

[5] In light of this holding, we do not address whether the appellant demonstrated that the ruling resulted in prejudice. *See Bolden*, 49 Va. App. at 290 (holding failure to establish one prong of the test renders the other "inconsequential"). *See generally Gamache v. Allen*, 268 Va. 222, 229 (2004) (explaining that impeachment of a witness's reputation for truthfulness "must be confined to the [witness's] general reputation . . . and may not include the commission of specific acts of untruthfulness or other bad conduct, even though these have bearing on veracity").

[6] In *Clinebell v. Commonwealth*, 235 Va. 319, 322 (1988), the Supreme Court explained that *false* accusations concerning "sexual behavior" are not encompassed by Code § 18.2-67.7, known as the rape shield statute. Similarly, here, Code § 18.2-67.7 is not implicated by the evidence the appellant complains was improperly excluded, namely J.B.'s allegedly prior false complaint.

inconsistent and did not make sense. The appellant had the opportunity to ask J.B. about her prior rape allegations against him and in fact did so extensively. Therefore, this assignment of error necessarily fails.

### III. Sufficiency

The appellant argues that the evidence is insufficient to support his conviction. He asserts that J.B.'s testimony was inherently incredible and unworthy of belief. He notes that there were "inconsistencies between the story she told the police officers on the scene the night of the incident, what she told the forensic nurse examiner, and what she testified to at trial." The appellant also argues that her behavior was illogical. Based on these factors, he reasons that J.B.'s "claims should not be believed." Finally, he asserts that his own testimony was consistent and is more believable.

When considering a challenge to the sufficiency of the evidence, the appellate court views the evidence, and all reasonable inferences fairly deducible from it, in the light most favorable to the Commonwealth, the prevailing party below. *Wactor v. Commonwealth*, 38 Va. App. 375, 379 (2002). The "reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc) (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003)). Instead, we "ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Crowder*, 41 Va. App. at 663). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

It is well established that "a conviction for rape . . . may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* at 369 (quoting *Wilson*, 46 Va. App. at 88).

Here, the jury's verdict hinged on witness credibility. The jury heard from the victim and the defendant. The law is clear that "[t]he fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)).

The conclusions of the jury "on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (alteration in original) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). As a matter of law, testimony is incredible only if it is "'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Accordingly, "[a] legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626

(2019). In making a credibility determination, the fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). Similarly, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Such circumstances are appropriately weighed and "'resolved by the fact finder,' not the appellate court." *Kelley*, 69 Va. App. at 626 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)); *see Juniper*, 271 Va. at 415.

Here, the jury credited J.B.'s version of the events despite the purported inconsistencies the appellant notes in J.B.'s accounts. "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient" to support the conviction "[i]f the trier of the facts" bases its decision "upon that testimony." *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). J.B.'s testimony established that the appellant penetrated her vagina with his penis against her will and by force. Despite J.B.'s clear statement that she did not want to have sex with the appellant, he invited himself into her bedroom. When he pushed his penis into her vagina, she said no and fought him. At one point, she pushed him away, but he continued to force himself on her. At another point, she pushed him off the bed, yet he returned to the struggle. Only after J.B. retrieved her handgun and fired a warning shot was she able to stop the attack.

The defense highlighted for the jury the variations in her statements and testimony. The appellant's attorney also argued that her behavior suggested that the sexual contact was consensual. A host of evidence was before the jury as trier of fact. J.B. explained her initial behavior, in part, as the result of her exhaustion that day. She also testified that she allowed the appellant, with whom she had an on-again, off-again relationship, to remain with her. J.B. stated

she did not perceive him as a threat considering his assurance that he had not come to her house to have sex. Although J.B. did not exhibit any visible injuries during her medical exam, the nurse examiner expert testified that a lack of visible injuries is common among sexual assault victims. J.B.'s testimony describing the rape was not "inherently incredible" nor "so contrary to human experience as to render it unworthy of belief." *See Johnson*, 58 Va. App. at 315 (quoting *Robertson*, 12 Va. App. at 858).

The competing evidence was before the jury, which had the opportunity to listen to the testimony, observe the witnesses, consider the arguments of counsel, and determine what happened. *See Lockhart v. Commonwealth*, 34 Va. App. 329, 343 (2001). In light of the circumstances, the jury was entitled to accept J.B.'s version of events and to reject the appellant's defense that the intercourse was consensual. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))).

Based on these facts and circumstances, J.B.'s testimony was not inherently incredible as a matter of law, and a reasonable fact finder could conclude beyond a reasonable doubt that the appellant was guilty of rape. Consequently, we do not disturb the jury's verdict.

CONCLUSION

The trial court acted within its discretion by denying the appellant's motion for a continuance. In addition, the trial court allowed the appellant to question the victim about her prior rape allegations against him, and the appellant cannot fairly complain that he did not have the opportunity to do so. Last, the evidence was sufficient to prove the appellant's guilt beyond a reasonable doubt. For these reasons, we affirm the conviction for rape.

*Affirmed.*