UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Bernhard
Argued by videoconference


KAI LANSANA

v.          Record No. 1624-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
NOVEMBER 5, 2025


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

Jonathan P. Sheldon (Sheldon & Flood, PLC, on briefs), for
appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Challenging the sufficiency of the evidence, Kai Lansana appeals his convictions for

first-degree murder, felony use of a firearm, and felony burglary.  He also claims that the trial

court gave faulty jury instructions and erred by admitting testimony that was unduly prejudicial.

Finding no reversible error, we affirm.

BACKGROUND

We recite the facts in the light most favorable to the Commonwealth, the party that

prevailed at trial.  *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc).  "Doing

so requires that we 'discard' the defendant's evidence when it conflicts with the

Commonwealth's evidence, 'regard as true all the credible evidence favorable to the

Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor."  *Id.* (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

On July 21, 2019, residents on Morehead Avenue in Roanoke heard a woman screaming for help, followed by gunshots. One of those residents peeked out from her front door, saw a woman bleeding in the street, and called 911. Witnesses saw two cars driving away. The victim, S.E.,[1] sustained gunshot wounds to her right hand, right neck, and left calf. She was pronounced dead at the scene.

Roanoke police officers secured the crime scene and took witness statements, including from James Banks. Banks was S.E.'s boyfriend, and he lived with her at the house on Morehead Avenue from which S.E. was seen fleeing. Banks told officers that their home had been broken into and asked if the woman in the street was S.E. Officers went to the couple's residence and confirmed that the back door had been kicked in.

The police retrieved security-camera footage from the surrounding homes. One of the cameras, pointing eastbound, captured two cars turning onto Morehead Avenue around 1:02 a.m. At 1:10 a.m., two men walked behind the row of houses on the same side of the street as Banks and S.E.'s house. S.E. then ran out the front door of her house, chased by two people. At 1:15 a.m., right after S.E. had been shot, the camera captured two cars leaving a vacant lot on Morehead Avenue. Officers recovered a pair of safety glasses from that lot.

The officers investigated as potential suspects those close to S.E., including Banks. But Banks was cleared from suspicion. He was at a gambling hall and a nearby 7-Eleven when the assailants chased down and shot S.E. Banks's alibi was corroborated by video footage from store security cameras.

Unable to tie other suspects to the murder, the officers obtained and served a geofence warrant on Google, asking for device records within 100 yards of S.E.'s residence between 12:50 a.m. and 1:30 a.m. on July 21. Using that data, investigators created a map and plotted the

---

[1] We omit the victim's name to protect her family's privacy.

locations of the various devices that were present. The police narrowed their focus to two devices. A second geofence warrant requested Google subscriber information for those devices, together with location data from July 7 through July 28. One of those devices belonged to S.E.'s neighbor; the other was registered to Lansana.

Lansana's information was cross-referenced with other law-enforcement databases. Data from the Department of Motor Vehicles showed Lansana's home address in Alexandria, Virginia. DMV records also showed that Lansana owned a 2017 Nissan Altima. That car resembled one of the vehicles seen in the home-surveillance footage leaving the scene of the crime.

Roanoke police officers served a third warrant on Google for Lansana's account information. The results showed that Lansana's phone had viewed and searched for directions to Roanoke from Alexandria on the night of July 20, 2019. The phone's internet history also included searches for Lansana's name, S.E.'s name, and burglaries involving Lansana in Northern Virginia.

The police also examined Lansana's public Facebook profile. One photo showed Lansana wearing a pair of safety glasses like the ones found in the vacant lot on Morehead Avenue; Lansana also wore a hardhat labeled "Virginia Paving Company." Lansana was employed by Virginia Paving in 2019, and the address and contact information in his employment paperwork matched the information in the cellphone and DMV records.

In response to a search warrant for the cellphone number on Lansana's Google account, T-Mobile provided subscriber information and geographic coordinate history. The records confirmed Lansana's home address and contact information, and they showed that his phone traveled from Alexandria to Roanoke on July 20, 2019, returning to Alexandria the next day.

Police obtained a warrant for Lansana's DNA, which was compared to DNA found on the recovered safety glasses. The Commonwealth's DNA expert determined that Lansana's DNA was on the glasses. The match with Lansana's DNA was "500 quintillion times more probable than a coincidental match to an unrelated person" of the same race.

A grand jury in Roanoke indicted Lansana for first-degree murder, use of a firearm in the commission of a felony, and statutory burglary. Lansana pleaded not guilty.

At the jury trial that followed, the Commonwealth's case revolved around the geofence data and the evidence from Lansana's cellphone. The Commonwealth also introduced testimony from Wesley Hedrick, Lansana's probation officer in 2019, to corroborate that Lansana was carrying the same cellphone two days after the murder. Before Hedrick testified, the trial court ruled that the Commonwealth would be limited to asking Hedrick about Lansana's obligation to meet with him as his probation officer. The Commonwealth was barred from asking why Lansana was on probation or the conduct underlying his crimes. Lansana objected, arguing that testimony from a probation officer would be unduly prejudicial because the jury would infer that he had a criminal record. Lansana argued that Hedrick's testimony should be excluded altogether. The court overruled Lansana's objection, concluding that the evidence would not be unduly prejudicial, particularly if coupled with a cautionary instruction that the jury is "not to concern themselves [with] why or how Mr. Lansana is required to meet with the probation officer." Defense counsel agreed that he would later request that instruction.

Hedrick testified that Lansana met with him at the probation office in Alexandria on July 23, 2019, just two days after S.E.'s murder. The data retrieved from Lansana's cellphone also confirmed that the cellphone was present at Hedrick's office from 2:00 p.m. to 3:18 p.m. on July 23.

At the conclusion of the Commonwealth's evidence, Lansana declined to put on evidence and rested. At the charging conference, Lansana objected to jury instructions four and five. Those instructions detailed the elements of concert-of-action and principal-in-the-second-degree liability. Lansana's defense throughout trial was that (i) the Commonwealth could prove only that Lansana's cellphone was in Roanoke, and (ii) someone else had his phone who was present when S.E. was murdered. Lansana argued that the Commonwealth failed to prove that he was involved with the murder. The court overruled his objection. As for the cautionary instruction about Hedrick's status as a probation officer, the trial court asked if Lansana "still wanted the Court to give the cautionary instruction," but defense counsel "indicated that he did not."

Lansana moved to strike the Commonwealth's case for failing to prove that he was one of S.E.'s assailants. Again, Lansana argued that the Commonwealth had proved only that his cellphone was present when S.E. was murdered, not that he was there. The court denied the motion to strike.

The jury found Lansana guilty of first-degree murder, use of a firearm to commit murder, and burglary while armed. The trial court imposed a life sentence plus eight years. Lansana noted a timely appeal.

ANALYSIS

Lansana challenges the sufficiency of the evidence supporting his convictions. He argues that the trial court abused its discretion by admitting his probation officer's testimony. He also argues that the trial court abused its discretion by giving the concert-of-action and principal-in-the-second-degree instructions. We consider those claims in turn.[2]

---

[2] Lansana withdrew his second assignment of error, so we do not discuss it.

A. *The trial court properly allowed limited testimony from Lansana's probation officer (Assignment of Error 4).*

Lansana claims that the trial court erred in allowing testimony from his probation officer. He argues that Hedrick's testimony was unduly prejudicial because it telegraphed to the jury that Lansana had prior convictions.

Virginia Rule of Evidence 2:403(a) provides that relevant evidence is admissible unless its probative value is "*substantially outweighed* by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact." (Emphasis added). Hedrick's testimony showed that Lansana had his phone with him two days after the murder, a fact that undercut Lansana's theory that a stranger had taken his phone and had it when S.E. was murdered.

The court acknowledged that Hedrick's testimony as Lansana's probation officer may have been somewhat prejudicial, but "[t]he fact that some prejudice may result does not justify automatic exclusion." *Mayfield v. Commonwealth*, 59 Va. App. 839, 849 (2012). "Evidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of *unfair* prejudice." *Gamache v. Allen*, 268 Va. 222, 227 (2004) (emphasis added); Va. R. Evid. 2:403(a). The trial court must balance that prejudice with the probative nature of the evidence, which is what the trial court did here.[3] Given Lansana's defense—that someone else possessed his phone at the time of the murder—the trial court did not abuse its discretion in concluding that the probative value of the evidence that Lansana possessed the phone shortly after the crime was not substantially outweighed by the danger of unfair prejudice.

---

[3] We disagree with Lansana's assertion at oral argument that the trial court did not balance probative value against unfair prejudice. The trial court said that the evidentiary determination called for "a balancing of the unfair prejudice" against the probative value of the evidence.

*B. The trial court did not err in denying Lansana's motions to strike nor in its jury instructions (Assignments of Error 1, 3).*

When reviewing challenges to the sufficiency of the evidence, this Court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it. *See, e.g.*, *Sarka v. Commonwealth*, 73 Va. App. 56, 62-63 (2021). The relevant question is whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Tatusko v. Commonwealth*, 79 Va. App. 721, 736 (2024). Our "sufficiency analysis 'does not distinguish between direct and circumstantial evidence, as the fact finder itself "is entitled to consider all of the evidence, without distinction, in reaching its determination."'" *Walker v. Commonwealth*, 79 Va. App. 737, 743 (2024) (quoting *Bagley v. Commonwealth*, 73 Va. App. 1, 26-27 (2021)).

The evidence sufficed for a reasonable trier of fact to conclude beyond a reasonable doubt that Lansana was one of S.E.'s assailants. To start, the cellphone and location data showed that Lansana's phone was at the crime scene when S.E. was murdered. Identity is often proven by cellphone evidence. *See, e.g.*, *Williams v. Commonwealth*, ___ Va. ___, ___ (Sept. 16, 2025) (relying on fact that the "cellphone-location data put Williams near all three robberies when they were committed"); *Brooks v. Commonwealth*, 74 Va. App. 133, 143-44 (2021) (GPS-location data placed the defendant at the crime scenes); *Edwards v. Commonwealth*, 68 Va. App. 284, 299 (2017) (defendant's cellphone records established his presence at the murder).

Other evidence showed that Lansana was one of the two perpetrators. The user of Lansana's phone—whom the jury could reasonably conclude to have been Lansana—looked up directions to Roanoke from Alexandria and back again. Those searches were made on July 20 and 21, respectively, bookending the date and time of the murder. The cellphone data also showed that the phone traveled from Alexandria to Roanoke on July 20, returning to Alexandria

- 7 -

on July 21, after S.E. was murdered. The phone was also used to search for stories about S.E., about Lansana, and about the Roanoke police investigation into S.E.'s murder. *Cf. Williams*, ___ Va. at ___ (cellphone evidence showed that the user "searched the [store] address" before the armed robbery and then "accessed nearly a dozen news articles about the . . . robbery"). When Lansana met with his probation officer in Alexandria, two days after the murder, Lansana still had his phone with him.

Still other evidence connected Lansana to S.E.'s murder. The DNA on the safety glasses recovered near the crime scene matched Lansana's DNA. Those safety glasses were the same kind and brand that Lansana used at his job with Virginia Paving. In addition, Lansana's car—a 2017 Nissan Altima—resembled the vehicle seen in the surveillance footage leaving the crime scene after S.E. was murdered.

Considering all the evidence, the jury could find beyond a reasonable doubt that Lansana used his phone to obtain directions to Roanoke; traveled from Alexandria to S.E.'s home; kicked in the door; chased her as she tried to flee; was one of the two assailants who shot her; dropped his safety glasses before driving home; and then searched for news stories about his crimes.

For the same reasons, we also disagree with Lansana that the trial court erred by giving the concert-of-action and principal-in-the-second-degree instructions. Lansana acknowledged at oral argument that, if Lansana was one of the two assailants, those instructions were proper. Because there was ample evidence from which the jury could find that Lansana was one of the two assailants, the trial court did not err in giving the challenged instructions.

## CONCLUSION

We find no basis to disturb Lansana's convictions.

*Affirmed.*